GUSTAV PANTZAR, Respondent, *v.* THE TILLY FOSTER IRON MINING COMPANY, Appellant.

A master owes the duties to his servant of furnishing adequate and suitable tools and implements for his use, a safe and proper place in which to prosecute his work, and, when they are needed, the employment of skillful and competent workmen to direct his labor and assist in the performance of his work.

No one of these duties can be delegated by the master to a servant of any grade so as to exonerate the master from responsibility to another servant who has been injured by its non-performance.

Where the general management and control of an industrial enterprise has been intrusted to a superintendent, he stands in the place of the master,

and his neglect to adopt all reasonable means and precautions to provide for the safety of the employes constitutes an omission of duty on the part of the master, rendering him liable for any injury to an employe, resulting therefrom.

Defendant was the owner of a coal-mine conducted under the management of a superintendent who had full power of control and discretion in conducting the work. Plaintiff, while working in a pit and upon a wall in the course of construction, for the purpose mainly of furnishing a place behind which to deposit the refuse material of the mine, was injured by the fall of a mass of rock from an overhanging cliff. In an action to recover damages for the injury, plaintiff's testimony tended to show that there had been for a long time prior to the accident a large crack parallel with and about ten feet back from the upper angle of the face of the cliff which was plainly visible ; that the attention of the superintendent and foreman had been called to it, and they were warned of its dangerous character; that they had instituted an experiment which showed that the crack was increasing in width, but they took no precautions, although practicable, to support the rock while men were working under it. The wall would, when completed, have furnished a support, but it required a long time to complete it and was not then a protection to the laborers at work upon it. The rock which fell broke off at the place where the crack had been observed. Plaintiff's duties did not call him to any place where the dangerous character of the rock was visible and he was ignorant of it. *Held*, that a motion for a nonsuit was properly denied; and that a verdict for plaintiff was justified by the evidence.

The rule that the servant takes the risk of the service presupposes that the master has performed the duties of care and vigilance which the law casts upon him, it only excuses where injury results to the servant from a hazard incident to the nature of the employment, not from a cause which the exercise of proper care and prudence on the part of the master would have foreseen and guarded against.

(Argued May 6, 1885 ; decided June 9, 1885.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department entered upon an order made January 13, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for injuries alleged to have been caused by defendant's negligence.

*Luther R. Marsh* for appellant. Plaintiff took service subject to all risks incident to the position. If the defendant did

nothing after the employment to aggravate the danger there is no liability. (*Gibson* v. *Erie Ry. Co.*, 63 N. Y. 452; *De Forest* v. *Jewett*, 88 id. 268; *Laning* v. *N. Y. C. R. R. Co.*, 49 id. 521; *Marsh* v. *Chickering*, 25 Hun, 405.) Plaintiff not having taken the trouble to look for the crack voluntarily assumed the risks incident to the business in which he was engaged, and cannot complain that he suffered thereby. (*McCosker* v. *L. I. R. R.*, 84 N. Y. 77; *Crispin* v. *Babbitt*, 81 id. 516; *De-Graff* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 125; *Stoutenburgh* v. *Dunbar*, 13 N. Y. Week. Dig. 445; *Conrad* v. *Collins*, 70 id. 90.) The master is bound to do every thing which, in the exercise of reasonable and ordinary care and prudence, he ought to do and must not omit any precaution which a prudent and careful man would take or ought to take. (*Leonard* v. *Collins*, 70 N. Y. 43.) If the person upon whom the duty of choosing is imposed makes a selection in good faith of one of several expedients, he will be protected in such selection, and negligence will not be imputed to him unless the means selected were so grossly inadequate to the result to be accomplished, as to prove that the selection was not made in good faith. (*Warner* v. *Erie Ry. Co.*, 39 N. Y. 474; *Urquhart* v. *Ogdensburg*, 91 id. 97.) An employer is not liable for accidents happening through the carelessness or negligence of a fellow servant. (*Malone* v. *Hathaway*, 64 N. Y. 5; *Devine* v. *Gas Co.*, 13 N. Y. Week. Dig. 24.) If a servant is the *alter ego* of the master, the one to whom the entire conduct of the master's business has been intrusted, then the master is responsible for his negligence. But if he is merely employed to do a specific thing and is subject to the specific directions of others, then he becomes a fellow servant with those associated with him in the same employment. (*Malone* v. *Hathaway*, 64 N. Y. 9; *Wilson* v. *Merry*, L. R., 1 Scotch & C. Ap. 326.) The mere title of "superintendent" proves nothing; it discloses neither the nature nor scope of his employment. (*Malone* v. *Hathaway*, 64 N. Y. 5; *Crispin* v. *Babbitt*, 81 id. 516.) Defendant's whole duty was performed when it employed competent men to superintend its mining operations. (*Crispin* v.

*Babbitt*, 81 N. Y. 516; *Slater* v. *Jewett*, 85 id. 61; *Warner* v. *Erie Ry. Co.*, 39 id. 468.) There being no proof that defendant could have taken any further precautions than were taken, and having done all in its power to protect the men, it is not liable. (*Fuller* v. *Jewett*, 80 N. Y. 46; *Warner* v. *Erie Ry. Co.*, 39 id. 468.)

*J. Edward Swanstrom* for respondent. The duties which a master owes to his servant are to exercise care and prudence to place beside him and over him skillful and competent fellow-servants; to provide perfect and adequate machinery or other material means and appliances for the performance of any labor which might be laid upon him, and to provide him a place where he may work, free from all danger to life or limb. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *Brickner* v. *Same*, id. 672; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549; *Booth* v. *Same*, 73 id. 38; *Fuller* v. *Jewett*, 80 id. 46; *Durkin* v. *Sharp*, 88 id. 227; *Kain* v. *Smith*, 89 id. 379; *Mann* v. *Prest., etc.*, 91 id. 495.) It is the duty of the master to take all reasonable precautions for the safety of his workmen; to exercise care and prudence that those in his employ be not exposed to unreasonable risks and dangers, and to be careful that his servants are not induced to work under a notion that tackle and machinery is staunch and secure, when in fact the master knows, or ought to know, that it is not so. (*Ryan* v. *Fowler*, 24 N. Y. 410; *Patterson* v. *Wallace*, 28 Eng. L. & Eq. 48; *Noyes* v. *Smith*, 28 Vt. 59; *Combs* v. *New Bedford Co.*, 102 Mass. 572; *Quincy Coal Co.* v. *Hood*, 77 Ill. 75; *Strahlendorf* v. *Rosenthal*, 30 Wis. 678.) The plaintiff, when he entered into the employ of the defendant, assumed those risks which were a natural and ordinary incident to the employment from causes open and obvious, and also any risks which might be announced to him in advance. But he did not assume risks that were unreasonable or extraordinary; nor risks that were extrinsic to the employment; nor risks of the master's own negligence. (*Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *Booth* v. *Same*, 73 id. 40; *Ryan* v. *Fowler*, 24 id. 410; *Hutch-*

*inson* v. *Ry. Co.*, 5 Wells., Hurlst. & Gord. 352; *Noyes* v. *Smith*, 28 Vt. 59.) The law does not exact absolute certainty, but when life is at stake it demands that care shall be taken to provide, so far as possible, against all contingencies. (*Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 339.) The defendant was bound to notify the plaintiff of the insecurity of the overhanging rock, and that it was loose. (*Strahlendorf* v. *Rosenthal*, 30 Wis. 678–680 ; Whart. on Neg., § 206.) Notice to the superintendent and the foreman of the insecurity of the overhanging rock was notice to the defendant. (*Quincy Coal Co.* v. *Hood*, 77 Ill. 75 ; *Spelman* v. *Fisher Iron Co.*, 56 Barb. 155 ; *Corcoran* v. *Holbrook*, 50 N. Y. 517.) The duty of inspecting the overhanging rock and taking precautions against its falling was a duty which concerned the safety and protection of the workmen, and therefore one which devolved upon the defendant to perform. (*Mann* v. *Prest.*, etc., 91 N. Y. 495 ; *Fuller* v. *Jewett*, 80 id. 46 ; *Durkin* v. *Sharp*, 88 id. 227 ; *Coughtry* v. *Globe Woolen Co.*, 56 id. 124.)

RUGER, Ch. J. The general principles upon which this action depends have been so frequently discussed in·recent cases that any thing more than a brief summary would be unprofitable. Thus it has been held that a master owes the duty to his servant of furnishing adequate and suitable tools and implements for his use, a safe and proper place in which to prosecute his work, and, when they are needed, the employment of skillful and competent workmen to direct his labor and assist in the performance of his duties. (*Bartonshill Coal Co.* v. *Reid*, 3 Macq. 275 ; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 522 ; *Brydon* v. *Stewart*, 2 Macq. 34 ; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 40.) That "no duty belonging to the master to perform, for the safety and protection of his servants can be delegated to any servant of any grade so as to exonerate the master from responsibility to a servant who has been injured by its nonperformance." (*Mann* v. *Pres.*, etc., *D. & H. C. Co.*, 91 N. Y. 500 ; *Booth* v. *B. & A. R. R. Co.*, *supra*.) And that when the general management and control of an industrial en-

terprise or establishment is delegated to a superintendent with power to hire and discharge servants, to direct their labors and obtain and employ suitable means and appliances for the conduct of the business, such superintendent stands in the place of the master, and his neglect to adopt all reasonable means and precautions to provide for the safety of the employes constitutes an omission of duty on the part of the master, rendering him liable for any injury occurring to the servant therefrom. (*Corcoran* v. *Holbrook*, 59 N. Y. 517.)

The case shows that the defendant was the owner of a coalmine in Putnam county, New York, conducted under the management of a superintendent. He was invested by them with full power of control over the same, and ample discretion and authority in directing the work, and using all suitable measures and precautions for carrying on the business of mining, and securing the safety of the workmen employed in the prosecution of the enterprise.

The action under review was brought by a servant of the defendant to recover damages for personal injuries received by him through the fall of a mass of rock, while working in a pit in which the mining operations in question were carried on. The plaintiff, at the time of the accident, was upon a wall in the course of construction, for the purpose of furnishing a place behind which to deposit the refuse material of the mine, and, as claimed by defendant, also with a view of supporting the overhanging cliff from which the rock injuring plaintiff fell. At the time of the accident this wall had been raised to the height of about sixty feet, and was still some fifty feet below the surface of the ground. While thus engaged with a number of other workmen a large mass was detached and fell from the brow of the projecting cliff under which the work was in progress, and caused the death of some and the serious injury of others, among whom was the plaintiff. The evidence as to the condition of the rock at the time of the accident was conflicting, and raised questions of fact peculiarly within the province of the jury to determine. On the part of the defendant, it tended to show that the cliff was composed of gneiss, a min-

eral naturally marked by seams, joints and foliations, and that it was in the frequent and continued habit of causing it to be examined for the purpose of discovering, if possible, appearances indicating immediate danger, and that no such indications had been observed before the accident. On the other hand, the plaintiff's evidence showed that a large crack, parallel with and about ten feet back from the upper angle of the face of the cliff, had long existed and was plainly visible; that the attention of the superintendent and foreman had been called to it and they were warned of its dangerous character; that they had instituted an experiment to determine whether it was growing or not, and that such experiment did show that it was increasing in width, and still took no precautions to support the rock while the workmen were engaged under it, although such precautions were practicable and frequently adopted in other mines. In some cases braces of timbers extending across from the side of the pit to the rock liable to fall were used, and in others the overhanging rock had been blasted off. It was also shown that a wall, such as that in process of construction, would, when completed, have furnished a support to the projecting mass. The plaintiff's evidence also tended to show that the rock broke off at the place where the crack had been observed, and that with the fall, the crack disappeared. It must, therefore, be assumed from the verdict of the jury, that it was determined that the rock fell from a cause of which the defendant had notice, and that precautions which would have prevented the injury were not adopted, although they were practicable and of easy and safe application.

The evidence tended to show that the wall, then in course of construction, was not a safe and suitable protection for the laborers engaged in working upon it. It obviously required a long time to complete it, and its main design seemed to be to furnish a place for the deposit of refuse material. During the course of its erection it certainly afforded no protection to those working below the cliff, and the jury was authorized to infer from the fact that it was not completed after a lapse of

several years, that it was not originally designed as a means of present protection from the dangers of falling rock.

The degree of vigilance and care required of a master in the adoption of means of protection toward his servants has been much discussed by elementary writers as well as in reported cases, and the conclusions reached applicable to such a case as the present are not disputed. To accept the rule extracted from *Leonard* v. *Collins* (70 N. Y. 90), and adopted in the appellant's brief, it is to inquire whether " the master did every thing which in the exercise of reasonable and ordinary care and prudence he ought to have done." " Did he omit any precaution which a prudent and careful man would take or ought to have taken," it is difficult to see how the defendant can claim exemption from liability.

But one exception was taken by the defendant in the case and that was to the denial by the court of its motion to nonsuit at the close of the plaintiff's evidence. It might very well be said that the broad question argued before us by the learned counsel for the defendant was not properly in the case as it was based to some extent upon evidence given subsequent to the taking of the exception; but as we think the judgment must in any event be affirmed, no injustice is done the plaintiff, by considering all of the evidence taken on the trial in determining the validity of this exception. The motion for a nonsuit was placed upon grounds stated concisely as follows : 1st. That the accident causing plaintiff's injury was incident to the hazardous nature of his employment and from a risk assumed by him on entering upon it. 2d. That it did not occur through an omission on the part of the defendant or its agents to perform any duty which it owed to the plaintiff. 3d. That there being no proof of the incompetency of the superintendent when originally employed, the defendant was not liable for an accident caused through an omission of duty on his part causing injury to a fellow servant. It may be said with reference to the ground last stated that it is disposed of by reference to the general proposition laid down at the outset of this opinion, and the other grounds involved questions of fact upon which the evidence

was quite sufficient to take the case to the jury. The motion assumes that the injury to the plaintiff occurred solely from a hazard incident to the nature of the employment, and not from a cause which could have been foreseen and guarded against by the exercise of proper care and prudence on the part of the master. This, however, was the very question which was disputed before the jury and decided by it adversely to the appellant.

The defendant's contention is based upon the evidence showing that it is the nature of gneiss rock to disintegrate and fall from time to time at unexpected intervals through the action of the elements operating upon it; but it does not follow from this fact that the master is excused from using proper precautions to protect his workmen from danger known to the master arising from such a cause. The very fact that the material was likely to fall upon and injure the defendant's servants at unexpected times imposed upon defendant the duty of inspection and frequent and careful examinations, and upon the discovery of any indications of danger, to adopt all suitable precautions to protect its servants from injury. The rule that the servant takes the risk of the service pre-supposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. (*Booth* v. *B. & A. R. R. Co., supra*.) It is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes.

It was for an omission to observe the dangerous appearances to which the evidence shows its attention had been called and its neglect to adopt suitable and proper means of protection. that the defendant has been held liable by the jury. The evidence tends to show that the plaintiff was ignorant of the dangerous condition of the rock, and that his duties did not call him to any place from which it could be observed. He, therefore, had a right to rely upon the performance of the duty owing by the master of adopting proper and suitable measures of precaution to guard him against the consequence of any danger arising from the obviously unsafe condition of the rock,

and is not justly censurable for an omission to discover the impending danger himself in time to avoid it. The master, however, had notice that the rock was in motion and was liable to fall at any moment and was, therefore, chargeable with the duty in the exercise of reasonable care and prudence of taking immediate steps to avoid the danger and of warning the men working under it, of the hazard to which they were exposed.

We, therefore, think that there was evidence sustaining the verdict of the jury and that the judgment should be affirmed.

All concur.

Judgment affirmed.