CHRISTINA KUHN, as Administratrix, etc., of JOSEPH KUHN, Deceased, Appellant, *v.* THE DELAWARE, LACKAWANNA AND. WESTERN RAILROAD COMPANY, Respondent.

*Master and servant — risk of employment — what duties the master may not delegate — negligence of the master — review of a judgment of nonsuit — evidence.*

A master owes to his servant the duty of furnishing suitable tools and implements for his use, a safe and proper place in which to prosecute his work, and, when they are needed, the employment of skillful and competent workmen to direct his labor and assist in the performance of his work.   No one of these duties can be delegated by the master to a servant of any grade so as to exonerate the master from responsibility to another servant who has been injured by its non-performance.

The rule, that a servant takes the risk of the service, presupposes that the master has performed the duties of care and vigilance which the law casts upon him, and it only excuses the master where the injury results to the servant from a hazard incident to the nature of the employment, and not from a cause which could have been foreseen and guarded against by the exercise of proper care and prudence on the part of the master.

The duty of a master to furnish to his servants suitable tools and a safe place in which to work is not an absolute one, but is fulfilled by the exercise of reasonable care and prudence on his part in supplying such tools and furnishing such place, that is, such care and caution as a prudent man would take for the safety and protection of his own person.

It is the duty of a master, when directing the performance of work by his servant in a place which may become dangerous, where such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, to exercise such care and adopt such precautions as will protect the servant from avoidable danger, and however he may choose to exercise such duty, whether through the supervision of a superintendent or

of some employee of a lower grade, it still continues to be the master's duty, and not until he shows that it has been properly performed can he claim exemption from liability for injuries occasioned by reason of the danger connected with the place of performance of the work.

When a master orders a servant to perform his work in a place prepared for him, the servant has a right to assume that the place has been made reasonably safe by the master through other and competent servants.

The risks of the service, which a servant assumes in entering the employment of a master, are those only which occur after the due performance by the employer of those duties which the law enjoins upon him, and the negligence of the master, co-operating with that of a servant, in producing injury to a co-servant, renders the master liable.

A master is chargeable ordinarily with knowledge of the means necessary to be employed in performing the work, and when their procurement and selection is delegated to a servant such servant stands in the place of the master in his discharge of those duties, and his neglect in that office is chargeable to the master as an omission of duty enjoined upon him.

When the question before an appellate court is whether a nonsuit was properly granted, the plaintiff is entitled to the benefit of all the conclusions that the jury would have been warranted in drawing from the facts and circumstances proved.

APPEAL by the plaintiff, Christina Kuhn, as administratrix, etc., of Joseph Kuhn, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oneida on the 14th day of December, 1893, upon the dismissal of the complaint after a trial at the Oneida Circuit, with notice of an intention to bring up for review on such appeal an order entered in said clerk's office on the 14th day of December, 1893, denying the plaintiff's motion for a new trial made upon the minutes.

*Charles H. Searle*, for the appellant.

*William Kernan*, for the respondent.

MARTIN, J. :

On the trial of this action the plaintiff was nonsuited. The action was to recover damages sustained by the plaintiff by reason of the death of her intestate, which was alleged to have been caused by the defendant's negligence.

The intestate, at the time of his injury, was at work upon a scaffold which had been erected by the defendant for the purpose of reslating the roof upon its engine house in the city of Utica. The

work of reslating was commenced about the 1st of September, 1891.
Two of the defendant's employees, Cole and Warner, who had had
some experience as slaters, were directed to do the work. The defend-
ant's superintendent of repairs directed the foreman of the defend-
ant's carpenter shop to construct " some horses that would be suffi-
cient for men to work on and slate the roof," without giving any
directions or information whatever as to the material to be used, the
number of men that were to work upon the scaffold, or whether the
old slate was to be used. The carpenter had had no experience in
making horses or scaffolds for the purpose for which this scaffold
was to be used. The scaffold as constructed was sixteen feet above
the ground, about twenty-five feet in length, and was supported by
three horses, one at each end and one in the center. The horses
upon which the floor of the scaffold was placed were constructed by
taking four hemlock boards, one inch in thickness, six inches in
width and sixteen feet in length, and nailing them to a head piece
or ledger, which was about four feet long; then strips of the same
material, four inches in width and one inch in thickness, were used
for stays, running crosswise inside of the legs, and five inch boards
of the same kind were nailed on laterally as braces or cleats. There
were six rows of cleats on the horses first constructed, and upon the
others there were but four. The material of which they were con-
structed was not tested to ascertain whether it was defective or
otherwise. They were set up next to the building, and planks
about twelve inches in width placed on top of them, two being
placed side by side from the center horse each way to the other.
At first braces ran up from near the foot of the horses to the mid-
dle of the plank which formed the floor, but the passing of engines
required these to be taken off from time to time, and after a few
days they were not put on again. One of the horses was broken by
an engine before the time of the accident, and the carpenter then
erected a staging on one side of a box car to take its place.

The plaintiff's intestate was a common laborer in the employ of
the defendant, doing such work around its shops and elsewhere as
he was directed. The defendant's superintendent of repairs directed
the intestate to go to work upon this platform or scaffold, assisting
the men who were reslating this roof. On September 15, 1891,
which was the day of the accident, the scaffold had been moved;

the old slate removed from a portion of the roof, a part of which was left upon the roof, and the remainder placed upon the scaffold. At the time of the accident the decedent was engaged in laying felt on the roof where the slate was to be placed. While thus engaged, the scaffold gave way, precipitating the decedent to the ground, where he struck his back on one of the rails in the defendant's road, and received injuries from which he died November 3, 1892. None of the persons engaged in constructing this scaffold had had any experience in building scaffolds of that kind, and none of them had seen scaffolds for any purpose of the height of this built in the manner this was constructed. It was found after the accident that the horses were badly broken, were torn apart, were in pieces, and the lumber of which they were constructed was season cracked, shaky and cross-grained.

It was proved that hemlock boards were not a proper or substantial material of which to construct the uprights or legs for such horses or scaffold; that hemlock lumber is usually of loose fiber, brittle and cross-grained; that such boards do not hold nails well; that they split and are weakened by nailing on braces, and that where hemlock is used as supports for scaffolds, two by fours or three by fours are ordinarily used. The evidence was sufficient to have justified the jury in finding that the scaffold was used in the manner contemplated when it was constructed; that the use was reasonable if the scaffold had been properly constructed, and that the defendant's superintendent knew of the manner in which it was used and how it was constructed before he sent the plaintiff's intestate to work upon it. The evidence also tended to show that the accident was occasioned by the giving way of one or more of the horses upon which the planks for the platform were placed, and that after the accident the condition of these horses was such as to indicate quite plainly that such was the cause of the accident.

We think it is quite manifest from the evidence that the jury would have been warranted in finding that the fall of the scaffold and consequent injury of the plaintiff's intestate were due to the structural weakness of the scaffold, which originated from the use of insufficient and improper materials, and from being constructed in an insubstantial and improper manner.

" A master owes the duties to his servant of furnishing adequate

and suitable tools and implements for his use, a safe·and proper place in which to prosecute his work, and, when they are needed, the employment of skillful and competent workmen to direct his labor and assist in the performance of his work. No one of these duties can be delegated by the master to a servant of any grade so as to exonerate the master from responsibility to another servant who has been injured by its non-performance. The rule that the servant takes the risk of the service presupposes that the master has performed the duties of care and vigilance which the law casts upon him. It only excuses where injury results to the servant from a hazard incident to the nature of the employment, and not from a cause which the exercise of proper care and prudence on the part of the master would have foreseen and guarded against." (*Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y. 368; *Davidson* v. *Cornell*, 132 id. 228, 234.) The rule as to the duty of the master is not quite correctly stated in the *Pantzar* case, in that the duty to furnish suitable tools and a safe place in which to work is not an absolute one, but is satisfied by the exercise of reasonable care and prudence on the part of the master to supply such tools and furnish such place, that is, such care and caution as a prudent man would take for the safety and protection of his own person. (*Probst* v. *Delamater*, 100 N. Y. 266; *Stringham* v. *Hilton*, 111 id 188.) The doctrine of the *Pantzar* case was re-asserted in *McGovern* v. *C. V. R. R. Co.* (123 N. Y. 280, 288), and the court then added: "When directing the performance of work by the servant in a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, it is his duty to exercise such care and adopt such precautions as will protect the servant from avoidable danger. This is the master's duty, and however he may choose to exercise it, whether through the supervision of a superintendent or some lower grade of employment, it still continues his duty, and not until he shows that it has been properly performed can he claim exemption from liability for injuries occasioned by its non-performance. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521, 532; *Corcoran* v. *Holbrook*, 59 id. 517.)" When the master orders a servant to perform his work in a place prepared for him the servant has a right

to assume that the place has been made reasonably safe by the master through other and competent servants. (*Kranz* v. *L. I. R. Co.*, 123 N. Y. 1, 4.) In *Benzing* v. *Steinway* (101 id. 547, 551) it was said : " It has been repeatedly held that the risks of the service which a servant assumes, in entering the employment of a master, are those only which occur after the due performance by the employer of those duties which the law enjoins upon him, and that the negligence of the master, co-operating with that of a servant in producing injury to a co-servant, renders the master liable. (*Stringham* v. *Stewart*, 100 N. Y. 516, and cases cited.)   \*   \*   \* The master is chargeable ordinarily with knowledge of the means necessary to be employed in performing his work, and when their procurement and selection is delegated to a servant, he stands in the place of the master in discharging those duties; and the servant's neglect in that office is chargeable to the employer as an omission of duty enjoined upon him. (*Ellis* v. *N. Y. C. R. R. Co.*, 95 N. Y. 546; *Slater* v. *Jewett*, 85 id. 61.) "

The trial court, in effect, held that the question of the contributory negligence of the plaintiff's intestate was, under the evidence, a question of fact for the jury. In this conclusion we concur. But it held that the evidence was insufficient to justify it in submitting to the jury the question of the defendant's negligence. Thus the question to be determined is, whether there was sufficient evidence of the defendant's negligence to require the court to submit that question to the jury.

The question before us being the propriety of a nonsuit, the plaintiff is entitled to the benefit of all the conclusions that the jury would have been warranted in drawing from the facts and circumstances proved. That the defendant owed the plaintiff's intestate the duty to exercise reasonable care and prudence to furnish him a safe and proper place in which to prosecute his work, and if it became dangerous, and the danger could be foreseen and guarded against by the exercise of reasonable care, to exercise such care and adopt such precautions as would protect the intestate, is abundantly established by the authorities cited. That this duty could not be delegated by the defendant to any of its servants so as to exonerate it from responsibility to the plaintiff or her intestate is equally well settled. Such being the duty of the defendant, a careful examina-

tion of the evidence renders it quite obvious that the question whether this duty had been performed, and, if not, whether its omission occasioned the injury to the plaintiff's intestate which resulted in his death, were questions of fact for the jury, and not questions of law to be determined by the court.

We are of the opinion that the evidence was sufficient to require the submission to the jury of the questions of the defendant's negligence and whether the injury complained of was occasioned thereby, and that the court erred in holding, as a matter of law, that the evidence was insufficient to justify it in submitting those questions to the jury, and for this error the judgment should be reversed.

Hardin, P. J., and Merwin, J., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.