JACOB KIMMER, as Administrator, etc., of WILLIAM KIMMER, Deceased, Respondent, *v.* JOHN WEBER and Another, Appellants.

*Master and servant — negligence of a foreman — damages resulting from the death of an employee — evidence as to the wages earned by the deceased.*

If the position of the foreman of a gang of masons is of such a character that the foreman is to be considered as a fellow-servant of the other masons, his negligence, causing the death of one of the masons, cannot be imputed to their common employer, but if he stands in the place of the employer in respect to the masons employed upon the work, then the employer is liable for any negligence of his which results in an injury to his servants.

Where the foreman of a gang of masons gave all the orders to the gang, even in the presence of his employers, and the only interest which the employers took in the conduct of the work upon which the masons were engaged was that one of them went there once or twice a day and talked to the foreman, giving no

directions to the men and leaving the whole conduct of the work to the foreman, the employers are liable for the action of their foreman, and his negligence is imputable to them in an action brought to charge them with damages for personal injuries sustained by one of such laborers resulting in his death.

The plaintiff in an action brought to recover damages resulting from the death of the plaintiff's intestate, by reason of the alleged negligence of the defendants, has the right to show what amount the deceased was earning at the time of his injury, and although his employers may have been accustomed to pay him more than they were under legal obligation to do, the fact that the articles of apprenticeship of the deceased did not require such payment in no way renders such evidence incompetent; it is still pertinent to the question of the pecuniary loss which has been sustained by the next of kin of the deceased.

The evidence of a witness, given upon the trial of an action brought to recover damages resulting from the death of the plaintiff's intestate by reason of the alleged negligence of the defendants, showing the amount of wages earned by the deceased at the time of the injury which resulted in his death, should not be stricken out because, upon cross-examination, the witness was shown not to have any personal knowledge of the amount which the deceased received, if the witness testified as to the sum which his son (the deceased) was accustomed to give him out of his wages.

Appeal by the defendants, John Weber and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of June, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order made on the 21st day of June, 1894, and entered in said clerk's office, denying the defendants' motion for a new trial made upon the minutes.

*Hamilton Wallace,* for the appellants.

*E. B. Barnum,* for the respondent.

Van Brunt, P. J.:

This action was brought to recover damages sustained by reason of the death of the plaintiff's intestate and son. At the time of the accident, the deceased was nearly nineteen years of age and was working for the defendants as an apprentice. The defendants were builders engaged extensively in building operations in this city, and at the time in question were employed in reconstructing Koehler's brewery on the corner of Twenty-ninth street and First avenue, where they employed a gang of men, of whom the deceased was one, the foreman being a man by the name of Joseph Turner. It appears that, for some time prior to the happening of the accident

which resulted in the death of the deceased, there were working in this building, besides the masons, a gang of plumbers and also a gang of carpenters, both of whom were entirely independent of the deceased. The plumbers had been using a scaffold constructed for them in the prosecution of their work in the lower stories of the building, which was taken apart and used in the upper floor where the accident took place and there re-erected. The ceiling, however, being much higher on this floor than on the lower floor, the height of the scaffold was increased by fastening uprights upon its top and the planks forming the plumbers' scaffold were placed on or near the top of the structure. While the plumbers were engaged upon this last floor, it became necessary for the masons in defendants' employ to do some work on the ceiling. For this purpose they erected a structure of their own, partially resting upon this plumbers' scaffold and partially resting upon a support which was erected by themselves. The fact of the insufficiency of this scaffold was called to the attention of Turner, who was the foreman of the defendants, and had been such for some ten years and gave all the orders to the men who were employed about the premises, although one of the defendants was accustomed to come to the work once or twice each day. Turner replied to the suggestion of the insufficiency of the scaffold, " Well, I guess it is all right ; " and the man went on working upon the scaffold under the direction of Turner. After the scaffold had been used for some time, in making some changes one of the cross pieces broke, the scaffold fell and the deceased was so injured that he died shortly thereafter. The question presented upon the trial was whether the defendants were liable because of the insufficiency of this scaffold. The jury having rendered a verdict in favor of the plaintiff, from the judgment thereupon entered and from an order denying a motion for new trial this appeal is taken.

It is urged that the court below erred in submitting any question to the jury upon the ground that there is no evidence in the case to connect the defendants personally with the accident ; and that if any negligence was shown it was that of Turner, the foreman of the gang of laborers, who was a fellow-servant and for whose negligence the defendants are not responsible.

It is undoubtedly true that if the position of Turner was of such a character that he was to be considered as a fellow-servant his neg-

ligence cannot be imputed to the defendants. But if Turner stood
in the place of the defendants with respect to the masons employed
upon this work, then the defendants would be liable for any negli-
gence of his which resulted in injury to their servants. That the
latter was his position seems to have been satisfactorily established
by the evidence. It appears that Turner gave all the orders to the
men, even in the presence of the defendants; that the only interest
which they took in the conduct of the work was that one of them
went there once or twice daily and talked with Turner, giving no
directions to the men, and leaving the whole conduct of the work to
Turner. This seems to bring the question within the rule laid down
in the case of *McGovern* v. *The Central Vermont Railroad Com-
pany* (123 N. Y. 281) where a principal was held liable for the
action of his superintendent, such superintendent having the entire
control of the elevator in which the accident happened.

It was also held in the case of *Pantzar* v. *Tilly Foster Iron
Mining Co.* (99 N. Y. 368) that where a coal mine was conducted
under the management of a superintendent who had full power and
control and discretion in conducting the work, the owner was liable
for negligence of such superintendent. In the case at bar it is
apparent that Turner had full charge and control of the work; he
was the only person who gave any directions to the men as to the
method of the prosecution of the work, and it is evident that the
defendants intrusted the same entirely to him. They would appear
to have exercised no control over the workmen, but simply to
have consulted with Turner who was conducting the work for them.
From this evidence the court had a right to hold that Turner had
full control of the work and full discretion as to the method of its
prosecution; and that, therefore, the defendants were liable for any
negligence on his part which resulted in injury to their servants.
And the jury having found upon the evidence to which brief notice
has been called that the scaffold was insufficient for the purpose for
which it was intended, and the accident resulted therefrom, and that
Turner was aware of its unsafe condition and failed to remedy the
defects or to provide a safe and stable scaffold for the workmen to
work upon, the right of the plaintiff to recover the damages sus-
tained, because of the insufficiency of the scaffold, seems to be
established.

Certain exceptions have been taken to the admission of evidence which it may be proper to notice. It is claimed that it was erroneous to admit evidence as to the wages the deceased received. This evidence was objected to upon the ground that the articles of apprenticeship were conclusive upon that point, and that any payment which may have been made to him beyond that which was called for by the articles, was a mere gratuity, and any agreement to pay anything further for his services was void for want of consideration. We do not see that this exception was well taken. The plaintiff had a right to show what amount this deceased was earning at the time, and although his employers may have been accustomed to pay him more than they were under legal obligation to do, the fact that the articles of apprenticeship did not require such payment in no way rendered the evidence incompetent. It was pertinent to the question of the pecuniary loss which had been sustained by the next of kin of the deceased.

It is urged that it was error not to strike out this evidence, because upon cross-examination the witness was shown not to have any personal knowledge of the amount which the deceased received. But it is apparent, the witness having sworn that this was the sum which his son was accustomed to give him out of his wages, that he had precisely the knowledge which it was important to lay before the jury, namely, the pecuniary loss which he had suffered by reason of his son's death.

The other exceptions to the admission of evidence do not seem to be worthy of particular mention.

Certain exceptions to the judge's charge are called to our attention. It is urged that the exception to so much of the charge as charged "That if the foreman is negligent the employer is himself liable as though he himself was negligent," was well taken. The court in reply to this exception stated: " If the foreman is negligent in the performance of a duty resting on the employer, the employer is just as much liable as if he personally had superintended the performance of the work. That is what I think I said and intended to say." It is urged that the court should have gone further and instructed the jury what were the duties resting upon the employer. This the court had already done. He had charged the jury: " That it is a legal duty resting upon him

(the employer) to see that such structures and such appliances or machinery as one of his employees is required to use in the natural and necessary prosecution of his business are adequate, or reasonably adequate, for that purpose," which seems to have been a correct exposition of the law. It is also urged that the exception to so much of the charge as charged that there was a conflict of evidence as to how the accident happened was also well taken, in that it is claimed that there was no conflict of evidence as to how the accident happened. It does not seem to us, whether the court was mistaken or not in charging that there was a conflict of evidence upon that point, that any injury has been sustained by the defendants thereby. But we think, upon a reading of this case, that it is not apparent precisely how the accident happened, and that there are discrepancies in the statements of the witnesses as to how the break occurred which caused the scaffold to fall. It is true that it is conceded that some of the fellow-servants of the deceased were in the act of handling a heavy timber in connection with this scaffold, but precisely how that timber caused the scaffold to break is a matter of dispute between the witnesses. Therefore, the court was entirely right in saying there was a conflict of evidence.

Upon the whole case we are of the opinion that the judgment and order appealed from should be affirmed, with costs.

FOLLETT and PARKER, JJ., concurred.

Judgment and order affirmed, with costs.