### WIEDEMAN v. EVERARD.

(Supreme Court, Appellate Division, First Department. December 31, 1900.)

1. MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE APPLIANCES—INJURIES—
SUFFICIENCY OF EVIDENCE

Plaintiff was at work in the malt box of a brewery, on the first floor, at the foot of a chute leading to the malt-grinding room on the third floor. The grinding machine, while working, caused a great deal of very inflammable dust, which, when ignited, spread rapidly, with something of an explosion. The chute was directly under the grinder, and was the only connection between the rooms, and was provided with a metal safety appliance to prevent the spread of fire, opening automatically to let ground malt through. This appliance was out of repair, and had been for some time, of which defendant's superintendent had been notified. While grinding, a fire suddenly burst forth, which was followed almost immediately by an explosion in the room where plaintiff was at work, injuring him. The operator of the machine had told the foreman not to allow the men to work in the malt box while the mill was grinding, but the superintendent ordered them to work there. Plaintiff had no knowledge of the defective condition of the appliance in the chute. *Held* sufficient to sustain a judgment for plaintiff.

2. SAME—DUTY OF MASTER—INSTRUCTIONS.

The charge submitted the question of defendant's negligence to the jury under instructions that all the master is bound to do is to exercise the care of an ordinary, prudent man under like circumstances, but if he does not exercise such care, and the injury results therefrom, he is liable; that in determining such question they must consider whether there was a defect in the machinery, of which the superintendent had notice, causing the injury. *Held*, that the charge was proper.

3. SAME.

The chute being a part of the machinery used in grinding the malt and conveying it to the malt room where plaintiff was at work, it was not error to refuse an instruction that there was no evidence that the explosion occurred through any neglect of defendant in the malt mill.

4. SAME.

The operator of the malt grinder having testified that the bearings on the machine were worn out, so that there was too much play; that the grooves in the cylinders were dull; and that the fire started from the mill, followed a few moments later by the explosion, causing the injury,— it was not error to refuse to charge that there was no evidence that the accident was caused from the position of the rollers, or bearings in which they were set, since the jury were entitled to consider all the evidence bearing on the condition of the machine.

McLaughlin, J., and Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action for injuries by Xaver Wiedeman against James Everard. From a judgment in favor of plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles C. Nadal, for appellant.

Robert Goeller, for respondent.

INGRAHAM, J. The defendant is the owner of a large brewery in the city of New York, in which the plaintiff was employed. On the 9th of July, 1891, the plaintiff was working in what was known as the "malt box," upon the first story of the brewery. Shortly before the accident hereafter referred to, the superintendent of the work ordered the plaintiff, with the other workmen, to empty the malt box, and while thus working an explosion took place. As the plaintiff testified:

"The explosion occurred. All in one moment I saw the whole floor and the whole box was afire. * * * The whole room was full of fire. I cannot tell you what happened to the partition between the dust and malt room. It burst at the same time."

And the plaintiff received injuries, to recover for which this action was brought. The plaintiff called as a witness one Carl Miller, who at the time of this accident was engaged in grinding malt upon what was called the "third floor." Upon this floor there was a malt-grinding machine, and from this machine there was what was called a "chute" leading directly to the floor upon which the plaintiff was at work, through which the malt which was ground was carried to the floor below. This witness testified that he had been grinding malt for about a quarter or half an hour, when—

"All of a sudden flames shot out. The flames shot from out of the mill. There was nothing before the flames. I did not hear or see anything before the flames. There was no kind of a report or noise. I did not hear any. There was one clap before the flames were away. Just like a shot. It was pretty loud. The room was filled where I was." That: "Before I started the mill I told Jacob Meyer he should go out of the malt box, and should take his people out of there. Jacob Meyer was the foreman of the wash house. He is the foreman under whom Mr. Wiedeman worked."

The witness further testified that, as a part of this mill, there was an appliance that was called the "safety." This was located in the chute or shaft which connects the mill with the first floor, about three to five feet under the mill. It seems to have been a metal plate, which, when shut, broke the communication between the mill and the floor below. It was so weighted as to open when a certain amount of ground malt was in the shaft, to allow it to go through, and then return in position until a further mass of ground malt had accumulated upon it sufficient to open it; and when this appliance was in proper order the communication between the mill upon the fourth floor and the room in which the plaintiff was working on the first floor was cut off, except when the safety appliance would open to allow the ground malt to pass through. Miller also testified that this appliance was not in working order at the time of the accident, and had not been in working order from the time that he first went to the mill, which was in 1888, about three years before the accident; that he had told Kreusler, the defendant's superintendent, about three or four weeks prior to the accident, that this safety appliance did not

work, and that the mill was out of order and should be repaired. Jacob Meyer, the foreman under whom plaintiff worked, testified that just prior to the accident he told Kreusler, the superintendent, that he had ordered the people to go out because Miller was grinding, and that Kreusler instructed the witness to send his men back to work, and he (Meyer) told the plaintiff to continue at work in the malt room; that about 10 minutes past 10 he went into the malt room to see how the men were working, and while he was in there the explosion occurred; that "both boxes went off like a shot from a cannon." There was also evidence to show that the rollers in the mill were out of order. It further appeared that the act of grinding malt caused a great deal of fine dust, which was very inflammable, and, when ignited, the fire spreads very rapidly, with something of an explosion; and this safety appliance to which attention has been called was designed to prevent the spread of fire from one story to another. It also appeared that, when a stone or other similar substance was carried through into the mill with the malt, it was liable to cause sparks.

I think that upon this evidence the jury were justified in finding that the fire originated in the mill; that it was carried from the mill down through this chute into the room in which the plaintiff was at work, and there caused the fine dust floating in the air to explode, which explosion caused the injury to the plaintiff; and that this safety appliance which was designed to prevent the spread of fire from the mill to the lower story did not work.

The rules which control in actions of this character are stated by Ruger, C. J., in Pantzar v. Mining Co., 99 N. Y. 372, 2 N. E. 24:

"The general principles upon which this action depends have been so frequently discussed in recent cases that anything more than a brief summary would be unprofitable. Thus, it has been held that a master owes the duty to his servant of furnishing adequate and suitable tools and implements for his use, a safe and proper place in which to prosecute his work, when they are needed, the employment of skillful and competent workmen to direct his labor and assist in the performance of his duties; that 'no duty belonging to the master to perform, for the safety and protection of his servants, can be delegated to any servant, of any grade, so as to exonerate the master from responsibility to a servant who has been injured by its nonperformance'; * * * and that when the general management and control of an industrial enterprise or establishment is delegated to a superintendent, with power to hire and discharge servants, to direct their labors, and obtain and employ suitable means and appliances for the conduct of the business, such superintendent stands in the place of the master, and his neglect to adopt all reasonable means and precautions to provide for the safety of the employés constitutes an omission of duty on the part of the master, rendering him liable for any injury occurring to the servant therefrom."

This plaintiff was put to work at the bottom of this chute, and while there at work was entitled to rely upon the presumption that the master had performed the duty of using all reasonable precautions to make this a safe and proper place in which to prosecute his work. It is not disputed but that it was understood that this fine dust floating about in the brewery was highly inflammable, and that there was danger of an explosion in case it became ignited. The defendant had provided an appliance to prevent the spread of fire from the machine to the room in which the plaintiff was working, but this

appliance was out of order. A fire occurred, which was followed by an explosion in the room in which the plaintiff was at work; and it seems to me that from this the jury were justified in finding that the explosion occurred because of a neglect of the master to perform the duty of keeping this safety appliance in order, and that the neglect to perform that duty was the proximate cause of the fire spreading from the floor above to the room in which the plaintiff was at work. The plaintiff went to work in this room while the mill was grinding, by express direction of his immediate superior, who acted under direction of the master's superintendent. There was evidence that the master's superintendent had knowledge of the fact that this safety appliance was out of order, and, with knowledge of that fact, had neglected to have it properly repaired, and directed the plaintiff to go to work in the room while the mill was running. There is no evidence that the plaintiff had any knowledge that this safety appliance was out of order, or assumed any of the risks incident to the defective condition of the appliance that was adopted to prevent the spread of fire and the explosion that actually occurred. It seems to me evident that it was a question for the jury to say whether or not the master had performed his duty, and that their verdict that he had not was sustained by the evidence.

There is no exception to the admission or exclusion of evidence which requires notice. There are some exceptions to the charge, and exceptions to refusals to charge, which the defendant relies on. The charge itself is quite unexceptionable. The trial judge left the question of the defendant's negligence to the jury, with instructions to which there can be no criticism. He told the jury:

"All the master is bound to do is to exercise ordinary care. If he did in that case do as an ordinary, prudent man would have done under like circumstances, he is exonerated, although the accident may have happened; but if he failed to exercise such care, and because of his failure to exercise care the plaintiff was injured, then the master is liable. In determining this question whether or not the master was liable, you will consider this subject to which I have just drawn your attention. Was there a defect in the machinery? Did the injury happen to the plaintiff because of the defect in the machinery of which Kreusler was notified?"

The instructions to the jury also included a statement that Kreusler stood in the place of the defendant, and that the knowledge of Kreusler was the knowledge of the defendant. But these instructions were sustained by the defendant's evidence, which showed that Kreusler was in charge of the work as general superintendent.

The other exception to which attention should be called is that taken to a refusal to charge that there was no evidence that the explosion occurred through any neglect on the part of the defendant in the malt mill, and that there was no evidence that the accident was caused from the position of the rollers, or bearings in which they were set. All through the case a distinction seems to have been made between the explosion in the room in which the plaintiff was at work and the fire that started in the malt room. The judge had very properly instructed the jury as to the conditions that must exist before they could find a verdict for the defendant, and as these requests were refused, except as already charged, I do not think it was error

to refuse them. The chute was a part of the machinery used in grinding the malt and conveying it to the floor below, and the charge that there was no evidence that the explosion occurred through any negligence on the part of the defendant in the malt mill would have been equivalent to a direction of a verdict for the defendant. Nor do I think that the refusal to charge the further request that there was no evidence that the accident was caused from the position of the rollers, or bearings in which they were set, in view of the charge actually made, was error. Miller, the grinder, had testified that the bearings on July 9th were worn out, so that there was too much play, and that the grooves in the cylinders were dull, and it was from the mill that the fire started which caused the explosion. While it would be doubtful whether this evidence in relation to the rollers and cylinders and their bearings would have been sufficient to sustain a verdict for the plaintiff, still it cannot be said that there was no evidence that the accident was occasioned by the position of these cylinders and their bearings. The jury were entitled to consider the condition of this mill in connection with the chute and the safety appliance provided to prevent the spread of fire, and then to determine whether or not the defendant discharged his duty to the plaintiff in putting him to work in the malt room, with such a machine in operation above him; and they were entitled to consider all the evidence bearing upon the subject of the condition of the machine. It cannot be said that there was no evidence that the accident was caused by the condition of the mill, for it was from the mill that the fire came. There was no request to charge that the defendant could not be held liable for negligence because of the condition of the mill unless the jury also found that the safety appliance was out of order, nor is there any exception that presents that question. Taking the charge as a whole, we do not think that the refusal to charge this particular request would justify a reversal of the judgment. The other requests have all been considered, and we think the case was a proper one for the jury, that it was submitted by a charge which was unexceptionable, and that the verdict was sustained by the evidence.

The judgment and order appealed from should be affirmed, with costs.

O'BRIEN and HATCH, JJ., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the prevailing opinion. What was the cause of the fire, or where it first originated, was not shown, and to conclude that "the jury were justified in finding that the fire originated in the mill; that it was carried from the mill down through this chute into the room in which the plaintiff was at work, and there caused the fine dust floating in the air to explode,"—is to do what the jury had to do in order to find the defendant liable, viz. guess at that fact, without any evidence to support it. The assumption in the prevailing opinion, either as to the cause of the explosion or the place where it first occurred, is speculation, and nothing else. To entitle the plaintiff to recover, he was bound to show both of these facts. The burden of

proof lay upon him to establish the liability of the defendant, and to do this he was bound to show affirmatively not only his own absence of contributory negligence, but some act of omission or commission on the part of the defendant which resulted in his injury. Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537. There is nothing to show that the condition of the "valve" referred to in the prevailing opinion permitted the fire to reach the plaintiff, or that it had anything to do with his injuries. The happening of the accident, in and of itself, did not entitle the plaintiff to recover. Before property can be taken from one person and given to another, to compensate the latter for an injury sustained, facts must be shown from which a jury can fairly find the relation of cause and effect, that the party from whom the money is to be taken caused, and the one to whom it is to be given sustained, the injury. Any other conclusion is the taking of money from one person and giving it to another by the simple fiat of the court. I think the plaintiff utterly failed to show that his injuries resulted from any negligent act on the part of the defendant, and for that reason the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., concurs.