JOHN PERRY, Respondent, *v.* JOHN C. ROGERS, Appellant.

91  243
22ap592
91  243
157a 251

*Master and servant — the duty of the master to furnish a safe place cannot be delegated — risks assumed by the servant — rocks falling from a cliff upon a servant two days after a blast.*

The care which the law demands from the master cannot be delegated to a servant, so as to exonerate the master from responsibility to a servant who has sustained injuries by reason of its not having been exercised.

A servant assumes only the risks ordinarily incident to the employment, arising from causes which are open and obvious or which are announced to him in advance. He does not assume the risk of the master's negligence, and the master is negligent if he fails to discover insecurities or dangers which could be detected by the exercise of reasonable care.

Upon the trial of an action brought to recover damages resulting from injuries caused by the alleged negligence of the defendant, a contractor engaged in the work of opening a road, it appeared that the road ran along the edge of the Harlem river, on the banks of which were high rocks, extending nearly to the water, which it became necessary to blast; that this work was done by commencing at the top of the cliff, boring holes in the rock, and throwing off a section of the face of the cliff by exploding powder in the drill holes; that the explosion would leave a "bench" lower down, covered with broken fragments of rock which had to be removed; that the plaintiff, a laborer, was ordered to clear off such a "bench," when a large rock fell upon him from above and injured him.

The defendant's theory was that the rock slid upon the plaintiff while he was attempting to remove it with his bar, while the plaintiff offered evidence tending to show that the stone had been broken off from a drill hole, that there was a hole drilled down by the stone, half of which left on the stone was burned by powder, his evidence permitting the conclusion that the stone had been detached or loosened by a blast which had taken place two or three days before the accident. The court, in its charge, fairly stated both views of the case to the jury.

*Held,* that a verdict for the plaintiff would not be disturbed.

APPEAL by the defendant, John C. Rogers, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 25th day of April, 1895, upon the verdict of a jury rendered after a trial at the Queens County Circuit, and also from an order entered in said clerk's office on the 13th day of May, 1895, denying the defendant's motion for a new trial made upon the minutes.

*William A. Jones, Jr.,* for the appellant.

*F. W. Catlin,* for the respondent.

DYKMAN, J.:

The municipal authorities of the city of New York were constructing a road called a speedway along the side of the Harlem river, and the defendant. was the contractor who was doing the work.

On the banks of the river were high and precipitous rocks, which extended nearly to the river's brink, and it became necessary to rend these rocks by the explosion of gunpowder or dynamite.

That was done by commencing at the top of the cliff and boring large holes in the rock and throwing off a section of the face of such cliff by exploding powder in the drill holes. That explosion would leave what was called a bench lower down, which would be covered with broken fragments of rock. Such fragments were removed after each explosion to make a clean surface for new drill holes. The plaintiff was in the employ of the defendant upon this work as a common laborer, and on the 19th day of July, 1894, he was ordered to go with two other laborers upon one of the benches, which was about forty feet above the place where he was at work, and clear off the bench. While in the performance of that duty a large rock fell upon him, and so crushed his foot that it became necessary to amputate the same above his ankle, and this suit is for the recovery of the damages which he has sustained from that injury.

The evidence of the plaintiff and his witnesses was that the place from which the rock fell was about seven or eight feet above the bench where the plaintiff was working.

While there was testimony on the part of the defendant tending to show that the rock slid upon the plaintiff while he was attempting to remove the same with his bar, both theories were submitted to the jury, as we shall hereafter see.

The case was tried at the Circuit before a jury, and a verdict rendered in favor of the plaintiff for $5,000.

The defendant has appealed from the judgment and from the order denying the motion for a new trial made upon the minutes of the court.

A fair opportunity to avoid harm is sufficient to impose upon a person the consequences of his conduct, if, when judged by common experience, he is blameful for his act.

It may now be assumed that the stone which fell upon the plain-

tiff had been detached and loosened by a blast two or three days prior to the injury.

Ordinary knowledge and experience teach us that an inspection and examination of the rock which fell upon the plaintiff would have detected the insecurity and danger of the place where the plaintiff was set at work. The evidence adduced by the plaintiff tended to show that there were the marks of a drill on the stone, and that the same had been broken off from a drill hole; that there was a hole drilled down by the stone; that half the hole was left on the stone which was burned by the powder. The menacing position of the stone was, therefore, easy of discovery.

Turning now to the rules of law applicable to persons who sustain the relation of master and servant, we find it to be the duty of the former to use reasonable care to' provide adequate and suitable implements for the use of the latter, and a safe and proper place for the prosecution of his labor. He was bound to make the reasonable inspection that a man of ordinary prudence would make.

He was bound to foresee whatever a prudent, intelligent man would have foreseen. "A prudent man foreseeth evil and hideth himself."

Negligence arises from an imputed or presumed foresight. In fact negligence may be said to be the want of foresight. The circumstances which make men liable for their acts or omissions must be determined by experience; that is, whether the circumstances under which an act is done are sufficient to sustain a charge of negligence must be determined by the common experience of mankind.

The care which the law demands from the master cannot be delegated to a servant so as to exonerate the master from responsibility to a servant who has sustained injury by reason of its non-exercise. (*Pantzar* v. *The Tilly Foster Iron Mining Company*, 99 N. Y. 372; *Corcoran* v. *Holbrook*, 59 id. 517.)

Very different are the duties which the law imposes upon the servant. While he accepts the risks and hazards of the service in which he voluntarily engages, and must contribute the exercise of his faculties, he may assume that the master has performed his duty, and used all reasonable diligence to make the place where he labors safe and secure.

He assumes only the risks which are ordinarily incident to the employment, from causes which are open and obvious, or which are announced to him in advance. He does not assume the risk of the master's negligence, and the master is negligent if he fails to discover insecurities and danger which could be discovered or detected by the exercise of reasonable care.

The theory of the defendant was met by the charge of the trial judge in this way : " If this stone had been detached so that it fell upon the bench, and if this plaintiff, in prying stones that were supporting it, became injured, he cannot recover, because it is an accident then which resulted from the nature of the employment itself. If the plaintif, in removing stone from the bench, so conducts his work that the stone that supports another falls upon his foot and crushes it, that is his lookout, but if it falls six or eight feet from the side of the hill above, and if a careful and prudent examination by the master would have revealed that danger, and he did not make the examination or have it made, then that is another question. It is a question between the master and the servant as to whether the master did what he ought to have done for the protection of the servant. * * * Because the plaintiff owes vigilance, he owes the exercise of his faculties to prevent the injury, and if an ordinary prudent man should have seen and anticipated this danger, the plaintiff was bound to anticipate it, and even if you find that the defendant was guilty of negligence, if you find that the plaintiff was guilty of negligence the action is gone. No action will lie, in a case where the plaintiff contributes in any degree to the injury resulting."

The verdict of the jury rendered under that charge closes all the avenues of escape against the defendant, and renders interference by the appellate court impossible.

It follows from the foregoing that the motion to dismiss the complaint was properly denied, and if the exception to the charge is to be considered after the explanation of the judge, it presents no error.

The judgment and order denying the motion for a new trial should be affirmed, with costs.

BROWN, P. J., and PRATT, J., concurred.

Judgment and order affirmed, with costs.