next of kin and his interest therein as creditor were concerned, to purposes other than the payment of his claim, authorizing George to use the same for his personal benefit in purchasing and taking conveyances of the shares above mentioned, and George having acted accordingly, and the plaintiff also, thereafter, having in an action of partition procured a judgment setting off in severalty to George in fee simple a five-sixths interest in said lands, which was accordingly done in that action, and the plaintiff and George thus, by agreement, having changed the nature of George's liability to pay the plaintiff's claim from a liability existing in his official representative capacity to one of a personal nature, and each having subsequently acted as aforesaid in accordance with that agreement, in such manner that George cannot be reinstated to his original situation, the plaintiff is estopped from maintaining any action to recover his claim against George in his capacity as administrator, and against his sureties, or against the next of kin. And since, under the statute, their liability, if any, precedes that of the heirs, he cannot reach the real estate by means of the statute under consideration. His present liability exists, not in his capacity as an heir, but by the parol contract, which was simply a personal obligation to pay the claim, and it was so understood by the parties; consequently that contract is the only basis of the plaintiff's remedy. The plaintiff is entitled to a judgment against the defendant George Moyer personally for the sum of $1,794.24, with interest from January 23, 1888, with costs. Pulver v. Skinner, 42 Hun, 322. The action against the remaining defendants must be dismissed, with costs to the defendant John J. Lamoree against the plaintiff. No other costs are allowed.

Judgment is ordered accordingly.

---

(8 App. Div 458)

### LYNCH v. NEW YORK CENT. & H. R. R. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

1. NEGLIGENCE—LIABILITY FOR ACTS OF LICENSEE.

A railroad company which permits the construction of an inclined track from a stone quarry down to, and partly on, the railroad line, is liable for the negligence of the quarryman operating cars on such inclined track, by which a passenger on the railroad is injured; and the fact that the negligent act which caused the injury was performed on the land of the quarryman is immaterial.

2. CARRIERS—INJURIES TO PASSENGERS—ACTS OF THIRD PERSONS.

A railroad company permitted the construction of an inclined track from a stone quarry down to, and partly on, the railroad line. A car descending the inclined track escaped, and collided with a passing train on the railroad. There was no barrier between the end of the inclined track and the railroad track. On two previous occasions a car descending the inclined track had escaped, and run on the railroad. One of the railroad company's trackmen knew of both previous accidents, and notified his foreman, who was charged with the duty of keeping the tracks in order. *Held*, that the collision should have been apprehended by the railroad company.

Appeal from circuit court, Erie county.

Action by Mary Lynch, an infant, by her guardian ad litem, against the New York Central & Hudson River Railroad Company, and Earl Buttery for personal injuries. From a judgment entered on an order dismissing the complaint as to defendant railroad company, plaintiff appeals. Reversed.

This action was begun October 17, 1894, to recover damages for personal injuries caused, it is alleged, by the negligence of the defendant. The respondent owns and operates a steam railroad along the east bank of Niagara river, between Lewiston and Suspension Bridge. June 27, 1894, the plaintiff held a ticket entitling her to ride on the respondent's road from Suspension Bridge to Lewiston and return. She made the trip from Suspension Bridge to Lewiston in safety, and later in the day took passage on one of defendant's trains to return to Suspension Bridge. While on her return, a car loaded with stone was precipitated through the side of the passenger car in which she was riding, by means of which her skull was fractured, and other serious injuries inflicted. At the time of the accident, Earl Buttery was, and for about two years had been, the owner of and engaged in working a stone quarry on the east side of and abutting on the respondent's railroad. This quarry is located on the side of a hill about 80 feet above the main tracks of the respondent's railroad. To facilitate the shipment of stone by the respondent's cars, it constructed a side track about 25 feet east of its east main track, on which side track the cars on which the stone was loaded were placed. Immediately east of the east rail of this side track, and on the respondent's land, a platform was constructed, 9 feet wide, and higher than the side track. From this platform Earl Buttery constructed a double-track gravity road to his quarry, which is 188 feet in length, 158 feet of it being on his own land, and 30 feet of it on the land of the railroad. This gravity road intersects the railroad at right angles. Its gauge is about 3 feet, and the two independent tracks are about 2 feet and 2 inches from each other. The highest point of the gravity road is in the quarry, and 73 feet higher than the platform. From this point, descending to the west towards the platform, there is a grade or fall of 10 feet in the first 75 feet. The grade then changes, and from the point where it changes to the platform the distance is 113 feet. This point at which the grade changes is 63 feet above the platform, so that there is a fall or grade of 63 feet in 113 feet. This gravity road was operated by two cars, each being about 8 feet long, and 4½ feet wide, mounted on four wheels. The cars were so connected that, when one loaded with stone was let down to the platform, an empty car was drawn back from the platform to the quarry, was there loaded, and let down to the platform. These cars were lowered and raised by a wire cable attached to a drum in a building at the quarry, called the "drum house." A brake was applied to the drum around which the cable wound by means of a lever operated by a man stationed at the drum house. By the application of the brake, the velocity of the descending car loaded with stone was sought to be, and generally was, controlled. But on two occasions, and within a year before this accident, a loaded car escaped, and was precipitated onto, and on one occasion over, the main tracks of the respondent's road. The sectionmen employed by the respondent knew of these accidents, helped clear the main tracks of the stone which fell from the car, and the respondent's foreman on this section of the railroad knew of both accidents. On the occasion in question a car was loaded with stone at the quarry, and pushed by the employés of Buttery along the level portion of the track lying in the quarry, until the car reached a point on this road where it would run by the force of gravity down to the platform on the respondent's railroad. The men who pushed the car into place supposed that the employé whose duty it was to operate the drum and brake was at his station, and they shouted to him that the car was ready to go down, and that a train was approaching on the railroad; but for some reason the brake was not applied, or, if applied, failed to control the movement of the loaded car. The evidence tends to show that the man whose duty it was to operate the brake was not at his station in the drum house, and that the velocity of the descending car was in

no wise controlled. At the moment when this descending car reached the respondent's track, the train on which the plaintiff was riding passed, and the stone car dashed over the platform, and through the side of the passenger car, injuring the plaintiff, as hereinbefore stated. There was some evidence that the drum and the appliances for controlling the movement of the stone car were crude, and not well constructed. On the trial a nonsuit was granted in favor of the railroad company, and a verdict was recovered against Earl Buttery for $2,750.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

P. F. King, for appellant.

Charles A. Pooley, for respondent.

FOLLETT, J. It is not asserted by the respondent that the plaintiff contributed in any way to the accident, nor is it asserted by her that the employés on the respondent's passenger train were negligent in its management. The evidence in this case presented two questions of fact, which ought to have been submitted to the jury; and, in case either had been found in favor of the plaintiff, she would have been entitled to recover: (1) Did the negligence of Earl Buttery, the quarryman, or of his employés, cause the accident? (2) Was the respondent negligent in permitting the gravity road to be constructed and operated, partly on its own land, in the manner described by the evidence?

It was conceded on the trial that the respondent built the side track, and built, or permitted the quarryman to build, the platform, which were wholly on the respondent's land, and permitted the quarryman to build the gravity road, partly on its land and partly on his land, for the benefit of both. The gravity road being built and operated partly on the land of the respondent by the quarryman, he was a licensee of the respondent, which became liable for the negligence of the quarryman and of his employés. Railroad Co. v. Barron, 5 Wall. 90; McElroy v. Railroad Co., 4 Cush. 400; Sher. & R. Neg. (4th Ed.) § 413; Busw. Pers. Inj. § 48; Thomp. Corp. § 6293. The respondent knew how the gravity road was constructed and operated, and the fact that the negligent act which caused the injury was performed on the land of the quarryman does not relieve the respondent from liability, as the situation was such that a negligent act on the part of the quarryman or of his employés would necessarily endanger the passengers on the road of the respondent. The gravity road was in plain sight of the respondent's officers and employés, and it was bound to take notice of the dangers incident to its operation.

2. A railroad is bound to exercise the greatest vigilance and care to keep its tracks clear from obstructions, animate or inanimate; and if it fails in its duty, and a passenger is injured by reason of its failure, it is liable for the injuries sustained. Donnegan v. Erhardt, 119 N. Y. 468, 23 N. E. 1051. The fact that external causes over which the corporation has no control set in motion an object which is cast upon its tracks or into its cars, causing an injury to a passenger, does not exempt the railroad from liability, provided the accident might have been prevented by the exercise of foresight and due care. In case rocks on land

not belonging to the corporation are set in motion by the action of the elements, and are cast on the track, causing an injury to a passenger, the railroad is liable, provided the accident ought to have been apprehended, and might have been prevented by the exercise of due care. When a passenger is injured, the question always is, was the accident one which should have been apprehended by the carrier? It seems to me that the accident which caused the injury to the plaintiff should have been apprehended by the managers of this corporation. These loaded cars of stone were let down this precipitous incline at right angles with the respondent's road, without anything to control or arrest their movement except the wire cable. There was no barrier between the platform and the respondent's main tracks. On two previous occasions a similar accident had occurred, though at a time when no train was passing, and no damage was done. A trackman who had been employed by the respondent testified that on two occasions after the cars had dashed down upon the respondent's road he cleared the stones from the tracks. He further testified: "After I cleared the stones from the track, I told the foreman of the central track, John Carr, about it." Carr testified: "I do not know of any time when those stone cars were down on the track before that day [referring to the day when the plaintiff was injured]." But he fails to deny that he was informed by the sectionman that cars had escaped and scattered stones on the respondent's tracks. An employé of the quarryman testified that, two years before the accident in question, a similar accident occurred. It is urged in behalf of the respondent that its officers had no notice of the previous accidents. The sectionmen and foreman were charged with the duty of keeping the respondent's tracks in order, and free from obstructions, and notice to them while engaged in the discharge of their duty was notice to the corporation. Notice to an agent while engaged in the discharge of his duties in respect to the matters intrusted to him is notice to his principal. A railroad is charged with a positive and an affirmative duty to keep its tracks clear, and it cannot excuse itself from the performance of this duty by showing that the obstructions were caused by the negligence of its licensee. This gravity road having been constructed with the assent of the railroad, partly on its land and partly on the land of the quarryman, it was bound to exercise due care to see that the gravity road was so constructed and operated that the tracks of the railroad should not be obstructed and passengers injured. In case a railroad corporation permits another to make a negligent use of its right of way, and thereby a passenger is injured, the corporation is liable. It seems to me that the existence and use of this gravity road, constructed and operated in the manner described, was evidence from which the jury might have found that the respondent was negligent in uniting in its construction, and in permitting it to be operated in the way that it was.

Daniel v. Railway Co., L. R. 3 C. P. 216, 591, L. R. 5 H. L. 45, is cited to sustain the contention of the respondent that a

question of fact was not presented by the evidence for the jury. In that case, the city of London, pursuant to an act of Parliament, was engaged in constructing works over the line of the railway company, over which works the railway had no control. The city of London was not the licensee of the railway, which had no power to prevent or to control the construction of the works, as the respondent had in the case at bar, and it was held that the railway was not liable for damages occasioned to a passenger by the negligent dropping of a girder upon its passing train. It was said that the railway was not bound to employ persons to watch and see that no accident occurred from the negligence of persons whom it did not employ and could not control. In the case last cited, the lord chancellor said:

"I apprehend that all that is to be done by those who carry passengers for hire is that they are bound to see that everything under their own control is in full and complete and proper order. They are bound to see, also, if there be a certain and definite risk as to which they have any knowledge, or can reasonably be supposed to have any knowledge, that it is sufficiently guarded against. For instance, a trench may be dug across a road through no fault of theirs, and in such a case they could not be held to be liable; but, if there is any reasonable ground for apprehending that extraordinary precaution is wanted, they would be liable."

In the case at bar, the respondent had no control over the employés of the quarryman, but it authorized the construction and operation of the gravity road, partly on its land; and, under such circumstances, it was bound either to prevent its operation, or to exercise due care that its operation should not injure its passengers. In such a case a railroad cannot exonerate itself by showing that the business had been delegated to others, for its duty is in such cases a positive one, to take care, as opposed to the negative duty of not being guilty of heedlessness or rashness. Whether the respondent exercised such affirmative care in this case was a question of fact for the jury.

The judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.