(22 App. Div. 588.)

TRUE v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Third Department. December 7, 1897.)

1. INJURY TO EMPLOYE—NEGLIGENCE OF MASTER.

    In case of death of an engineer, occasioned by his locomotive running into a quantity of shale on the track, which had, within two hours before, slid from a bank, about 60 feet high, by the side of the track, the question of whether the railroad company was negligent in not properly inspecting the bank, and discovering and removing the material liable to slide down and onto the track, is a question for the jury; the bank being steep, and close to the track, and its formation such that material sliding down would almost necessarily be thrown on the track; the character of the rock being known, and slides expected; and the inspection being merely by sending a watchman along the track at this point once a day on fair days, and stationing him there all the time on wet days; and there being no effort to actually examine the rock.

2. SAME—ASSUMPTION OF RISK.

    A locomotive engineer does not assume the risk of injury from the sliding of rock onto the track from a bank close to it, which a proper inspection would prevent; he not knowing that the railroad company did not make such inspection.

3. APPEAL—REVERSAL.

    On reversal of a judgment of nonsuit, judgment should not be ordered for plaintiff, under Code Civ. Proc. § 1187, but there should be a new trial; the verdict which plaintiff had being a general one, and defendant, though denied a new trial, having failed to appeal from the order of denial, because of the granting of nonsuit after verdict.

Appeal from trial term, Tompkins county.

Action by Josephine True, administratrix of Charles R. True, deceased, against the Lehigh Valley Railroad Company, for death of intestate. From a judgment of nonsuit, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, PUTNAM, and MERWIN, JJ.

Halliday & Denton, for appellant.

Taber & Brainard, for respondent.

MERWIN, J. On the 11th November, 1895, Charles R. True, the plaintiff's intestate, was the engineer upon one of defendant's trains that left Ithaca about 7 o'clock in the morning, going north. As this train was passing along between the villages of Aurora and Levanna, at about 9 o'clock, it encountered a quantity of shale that was lying upon the track at the foot of a steep bluff. This obstruction, by reason of a curve in the track near that point, was not observed in time to stop the train. As the engine passed through or over the shale, the forward trucks were thrown from the rails, and this resulted in the derailment of the engine. After proceeding along the ties for about 500 feet, the engine tipped over, and True received injuries which resulted in his death. The railroad track passes along the base of the bluff for about three-fourths of a mile. At the place of the obstruction the bluff was about 60 feet high, and nearly perpendicular. According to the defendant's survey the following winter, the bank, in a height of 33 feet from the rail, slopes back about 5 feet, and at the top of the rock the slope

back is about 15 feet from the base of the rock. The nearest rail of the track is from 3 to 6 feet from the base of the rock. There is a bulge or shoulder about 10 feet from the base. There was evidence tending to show that the shale came from the upper part of the cliff, sliding down over this shoulder onto the track. The quantity is described as being two or three big wagon loads, and as being 3 or 4 feet high on the track. It was said that there was no strength to it; that it was very fine. There was no obstruction there two hours before the accident. There was evidence that the first appearance of the whole rock along there was like solid rock, to a man walking along there, but in fact it was nothing but soft shale rock; that at first glance the rocks looked like solid rock, but upon examination it was in fact shale; that, upon a stone being thrown against it, it would rattle down. It was accustomed to crumble and slide down in small quantities,—more in wet weather than in dry,—although one witness for the defendant says that the biggest slide they ever had along there was in dry weather. The shale, as it fell along the bluff, would lie in the ditch beside the track, and would sometimes be on the rail. The character of this rock, and its liability to slide, were known to the defendant. It cleared the shale off the bank at some places. It does not definitely appear when, if ever, it had been cleared off at the place of the accident, or that it had ever been examined there, except by looking at it from the track. At some places a man had been let down from the top of the rock, and the loose shale removed by the use of a bar. Some had been so removed at a point near the place of the accident. It appeared that, by reason of these slides, trains had several times jumped the track, though no accident in other respects had occurred. The defendant had a track walker, whose duty it was to walk along the track at this point every morning about 7 o'clock; that being just before the passage of a passenger train. In wet weather it was his duty to stay there all day, and watch the bluff. Upon the day in question he had passed along at the usual time, but did not stay, as it was a dry and clear day. One of the duties of the defendant's foreman upon that section, in regard to this bluff, was to look it over, and take down any loose shale. The deceased knew of the liability of this shale to slide; had been running trains over this track more or less for several years; had met with shale on the track, but not in any quantity to be dangerous. There was evidence that many of the ties at this place were rotten, and that the rails spread at the time of the accident. At the close of the evidence the defendant moved for a nonsuit, upon the grounds that no negligence of the defendant had been shown; that the death was due to a risk that was obvious and known to the deceased, and was incident to his employment, and assumed by him; that the death was due to the negligence of a co-employé. The plaintiff claimed that the defendant was negligent (1) in permitting the ties to be in a rotten and dangerous condition; (2) in not properly watching the track prior to the passage of the train; (3) in failing to properly inspect the bluff and remove the material liable to slide down. The court reserved the motion for a

nonsuit, saying, in substance, that it would submit the last ground of negligence to the jury, and, after the verdict, would, if necessary, consider and determine the motion for a nonsuit. The case was accordingly submitted to the jury, and a verdict was rendered for the plaintiff for $3,000. The defendant thereupon made a motion on the minutes for a new trial, upon all the grounds specified in section 999 of the Code. This motion was denied, but the motion for a nonsuit that was reserved was granted, upon the ground that there was not sufficient evidence to go to the jury of the negligence of the defendant. The question is whether the court erred in granting a nonsuit.

It was the duty of the defendant to exercise reasonable prudence and care in keeping the track free from obstructions, and if, by reason of the failure of defendant to perform this duty, the injury in this case happened, a basis for liability was established. Donnegan v. Erkhardt, 119 N. Y. 468, 23 N. E. 1051. In Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24, it was held that the duty upon the master to furnish a safe and proper place in which the servant might prosecute his work could not be delegated by the master to a servant of any grade, so as to exonerate the master from responsibility to another servant who has been injured by its nonperformance. In Bailey v. Railroad Co., 139 N. Y. 302, 34 N. E. 918, it was held that the company owed its employés the duty of proper inspection for the purpose of discovering defects which may arise from use of machinery (in that case, a brake upon a freight car), and that the adoption of a rule requiring inspection did not relieve the company from liability, but that it was liable for injuries to an employé caused by a negligent omission of subordinates, who were required by the company's rules to make due inspection, to perform that duty. In Durkin v. Sharp, 88 N. Y. 225, it was held that, in order to relieve the defendant from responsibility for a defective track, there must have been a careful inspection by a competent inspector. So it has been held that a liability exists where an accident ought to have been apprehended from overhanging or impending rocks, and might have been prevented by the exercise of due care. Lynch v. Railroad Co., 8 App. Div. 458, 40 N. Y. Supp. 775; Perry v. Rogers, 91 Hun, 243, 36 N. Y. Supp. 208. In the present case it was the duty of the defendant to exercise reasonable care in inspecting the bluff at the locality of the accident, and in discovering and removing the material liable to slide down and obstruct the passage of trains. The bank was high and steep, and close to the track, and its formation was such that material sliding down would almost necessarily be thrown upon the rails. The character of the rock was known, and slides were expected. Upon wet days, a watchman was stationed there all the time. The inspection, as in fact made, was such only as could be made by observation in passing along the track; and it should not, as matter of law, be said that that was sufficient. No effort was made to actually examine the rock. The question whether the defendant was negligent was, we think, for the jury to decide.

It is claimed by the defendant that the decedent had knowledge of the danger, and assumed the risk. "The rule that the servant

takes the risk of the service presupposes that the master has performed the duties of care and vigilance which the law casts upon him.   It only excuses where injury results to the servant from a hazard incident to the nature of the employment, not from a cause which the exercise of proper care and prudence on the part of the master would have foreseen and guarded against." Pantzar Case, supra.   The decedent had a right to assume that the defendant had performed its duty.   He knew the general character of the bluff, and that the shale sometimes rattled down.   He had not met with any dangerous slide before.   He was not called upon to exercise for himself the duty of inspection that was imposed upon the defendant.   He had the right to believe, or the jury might find that he had a right to believe, that no such slide would be allowed to happen, or would occur, if the defendant exercised due care.   The fact that he knew of some danger would not necessarily impose upon him the assumption of the risk of a greater danger that the defendant, in exercise of proper care, might have avoided.   Hawley v. Railway Co., 82 N. Y. 370; Pidgeon v. Railroad Co., 87 Hun, 43–45, 33 N. Y. Supp. 870, affirmed 152 N. Y. 652, 47 N. E. 1110.   The question of the contributory negligence of the decedent, including the question of his assumption of the risk, was, I think, for the jury.

These considerations lead to a reversal of the judgment entered upon the nonsuit.   It is suggested on the part of the plaintiff that in this event a judgment may be ordered by this court for the plaintiff on the verdict, under the provisions of section 1187 of the Code.   The verdict here is a general one, and not a special verdict, as contemplated by that section.   The defendant's motion for a new trial was denied.   There was no occasion for it to take an appeal from that order, as the motion for nonsuit was granted.   So that, if final judgment on the verdict is directed against the defendant, it would lose the benefit of any exceptions it may have taken to rulings on the trial aside from the ruling on the nonsuit.   We think a new trial must be granted.   All concur.

Judgment and order reversed, and new trial granted; costs to abide event.