(35 App. Div. 155.)

### DI VITO v. CRAGE et al.

(Supreme Court, Appellate Division, Fourth Department. December 9, 1898.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK.

A laborer working in an excavation in the side of a bluff does not assume the risk of injury from the rolling down upon him of stones thrown out in the process of blasting for such excavation, which are allowed by his employer to remain on the bank above.

2. SAME—EVIDENCE.

Plaintiff, while working in an excavation for a railroad, being made in the side of a bluff, was injured by a stone rolling down upon him from the bank above. Several witnesses testified that defendants, in blasting for

the excavation, made no effort to prevent the rocks from being scattered about, that rocks were scattered in all directions, and that defendants did not clear away such rocks which landed on the bank above. *Held* sufficient to sustain a finding that the injury resulted from a stone which had been thrown out by a blast.

Ward, J., dissenting.

Appeal from trial term, Niagara county.

Action by Frank Di Vito against Donato Crage and another for personal injuries. Verdict for plaintiff for $2,000, and from an order denying a motion for a new trial, and from a judgment entered on the verdict, defendants appeal. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

Hazel & Abbott, for appellants.

Brong & Jeffrey, for respondent.

HARDIN, P. J. In 1895 the plaintiff was in the employ of the defendants as a laborer. They were engaged in making excavations for the construction of an electric street railway on the east side of the Niagara river, by cutting a bench into the side of the embankment, upon which to locate the railway tracks. In order to carry forward the work undertaken by the defendants, it was necessary to cut away portions of the easterly bank of the river, and remove the same, and to do blasting, and work with pick, hoe, shovel, and other implements used in the construction of the embankment for the location of the road. Some time in May the plaintiff was employed by the defendants, and continued to work for them down to the period of time when (on the 18th of August) he received the injuries for which he complains. Saturday night, the 17th, the foreman of the defendants insisted that the plaintiff should on the morrow go to the place where the work was being excavated, and assist in furthering the purposes of the defendants, although the next day was Sunday; and the evidence tends to show that the foreman of the defendants told the plaintiff that he must appear on that day and pursue the labor, or "he would lose his job." It is alleged that the place where the plaintiff received the injuries was an unsafe and dangerous place, and that the defendants "negligently, carelessly, and wrongfully maintained and provided, * * * without due regard to the safety and protection of the plaintiff," the place where the plaintiff was required to work. It is alleged that, while the plaintiff was so engaged under the direction of the foreman of the defendants, "a large quantity of rock, dirt, and other heavy substances became detached from some portion of said bank above him, and which fell and was precipitated upon the head and body of this plaintiff, and which caused him to fall from a certain platform and projection of said embankment, upon which he was then standing, down to and upon another platform of said embankment, a distance of about seventy-five feet, whereby this plaintiff suffered many contusions and lacerations of his body, a fracture of his skull, legs, and other bones of the body, and suffered serious and severe personal injuries, by reason of which he was made sick, sore, and lame, and confined to his bed for a long time thereafter, and

was thereby permanently injured." It is further alleged in the complaint that the plaintiff did not in any manner contribute by his own negligence or carelessness to the injuries which he received. At the close of the plaintiff's evidence the defendants moved for a nonsuit, upon several grounds specified, which was denied, and an exception was taken. At the close of the whole evidence the defendants moved for a direction of a verdict. That motion was entertained and denied, and the defendants excepted to the denial thereof.

The trial judge, in his charge, submitted the question to the jury as to whether the defendants were guilty of negligence from which the injuries received by the plaintiff occurred, and also the question whether the plaintiff was free from contributory negligence. The evidence is somewhat conflicting in respect to both questions. The learned counsel for the appellants insist upon a statement of facts favorable to the contention made by them, that the defendants were not shown to be guilty of negligence. They also present a statement of facts from which they insist that the conclusion should be drawn that the plaintiff was guilty of contributory negligence. On the other hand, the respondent's learned counsel presents a state of facts found in the evidence from which he insists that the question as to the negligence of the defendants, and the question as to the freedom of the plaintiff from contributory negligence, were proper for the jury to pass upon. We think the verdict is supported by the evidence furnished on both propositions, and that the learned trial judge committed no error in submitting the case to the jury, which he did in a very clear charge, presenting both aspects to the jury, with instructions that the plaintiff had the burden of the case on both branches, and that the jury must be satisfied that the plaintiff had successfully borne the burden; that, if the case was evenly balanced, the verdict should be for the defendants. We think the charge was sufficiently favorable to the defendants, and that no error was committed by the trial judge in dealing with the requests which were made at the close of the body of his charge.

It is insisted by the appellants that the plaintiff assumed the risks when he entered into the employ of the defendants, and that such assumption is a barrier to his right of recovery. The rule as to assumed risks is quite clearly stated in True v. Railway Co., 22 App. Div. 588, 48 N. Y. Supp. 86, and in cases there cited. It was there held, viz.:

"The rule that the servant takes the risk of the service presupposes that the master has performed the duties of care and vigilance which the law casts upon him. It only excuses when injury results to the servant from a hazard incident to the nature of the employment, not from a cause which the exercise of proper care and prudence on the part of the master would have foreseen and guarded against."

There was evidence in the case that in the progress of the work the defendants had caused blasts to be made which threw stones at various distances from where the blast was discharged, and some of them up the bank near the top. The witness Sheldon observed the movement of the stone which struck the plaintiff and caused the injuries. He says, viz.:

"The stone fell right straight down to the bench, and up this way, and went right into where he was stooping over like this,—right straight off the top to the bench above him, and bounded, and went right into where he was stooping over like this. I didn't watch the stone to see where it went. I could not see whether this rock hit anything before it hit this bench of rocks by his side. It did not, that I could see. I had no other business at all than this, of attending to that museum, at those times. I was there daily. Immediately preceding this accident I was right there every morning until night. I observed each day the top of the bank, and the bank, and these workmen engaged in this excavation. They were blasting all the time. I run away from blasts from time to time. When blasts were made, there was nothing put over them to hold the stone down, that I could see,—no planks or brush or anything. When blasts were exploded, rocks flew in all directions. Sometimes the blasts, if they could get it out that way, they would dodge into the river, sometimes they would go clean over into Canada, and sometimes they would go over the whole bank, and fill the yards, and on top of the buildings and roofs, and break shingles."

This witness adds that he had seen rocks thrown through a woman's chair on Whirlpool street, and through the field, and that they dropped "on the edges of the bank, and wherever they happened to light."

The witness Cosano testified that he was on top of the bank shortly before the accident, and that he observed, right on top of the bank, stone—

"Where they shoot them blasting; and you see the stone flying all over, and some of the stone stop way inside of the bank, and some stop right on the edge and all over, most every place; and I see lots along the edge of the bank, and I see lots in field, and all over. You can tell the difference of the kind of stone from the old one and fresh new one. I have seen them blast there different times, and seen the stones fly. There was two or three times, and I see, when the blasting comes, the stone fly up high and all over, and on the other side of Canada, and all over the place. * * * I never saw anything put over the rocks, when these blasts were exploded, to hold them down."

The witness Calallo testified, viz.:

. "While looking at the top of the bank, I saw a stone fall in the direction where Frank stood. That stone fell from the edge of the bank."

There was some evidence tending to indicate that the bank was not cleared off after the blasts had occurred.

We think there was sufficient evidence given to warrant the jury in finding that one of the stones which were cast up by the blast became disengaged, and rolled down the bank, and caused the injuries which the plaintiff received.

Appellants learned counsel calls our attention to Ruppert v. Railway Co., 154 N. Y. 90, 47 N. E. 971. This case differs quite essentially from that. Here the circumstances were detailed in the evidence, and the inferences which the jury apparently drew seem to have been reasonable, from the testimony before them. In the case referred to it was said that "if, upon the testimony, it is as probable that the injury resulted from the act of another as from that of the defendant, the plaintiff cannot recover." In that case it appeared that the stone which caused the injury differed in kind from those used by the defendants, and was of the same kind as those being used by other parties in paving streets in the vicinity, and which they carted over the street in question. Therefore, the inference drawn by the jury was not sup-

ported by the evidence. We see nothing in that case which aids the contention of the appellants.

We think the learned trial judge, in his charge, presented the rules of law applicable to the case, and his review of the evidence is quite satisfactory; and the verdict of the jury accords with the inferences that were properly deducible from the evidence. Mead v. Parker, 111 N. Y. 262, 18 N. E. 727.

We have not overlooked the contention of the appellants "that there is no evidence to be found anywhere in the case that the stone in question was ever at any time on top of the bank," and the defendants' request that the court charge to that effect. In response to the request made in that regard, the court observed:

"I decline to charge that; that is, I leave that as a question of fact for you gentlemen, on that subject. I read the evidence of one of the witnesses on that subject, and stated what Mr. Sheldon testified to. You will remember that. I leave that for the jury."

We think the exception taken to that part of the charge presents no error.

We think the failure of the plaintiff to use the rope at the time he received the injuries had no casual connection with the accident.

The verdict was moderate, when considered in the light of the injuries sustained by the plaintiff, and no criticism or question is made in respect to the amount thereof.

Judgment and order affirmed, with costs. All concur, except WARD, J., dissenting.