## TETHERTON v. UNITED STATES TALC CO.

(Supreme Court, Appellate Division, Third Department. May 9, 1899.)

1. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT.
    Negligence of a servant does not excuse the master from liability to a co-servant for an injury which would not have happened had the master performed his duty.

2. SAME—LIABILITY OF MASTER—REVIEW.
    Plaintiff's intestate was killed by the fall of a pillar of talc while engaged in defendant's mine. Defendant's managing agent had notice of the dangerous position of the pillar and of its liability to fall previous to the accident, and that timbers had been procured for protecting it, which had not been used. Water had accumulated on the upper side of the pillar, and, by dripping down between the crevices of the layers of talc, softened the greasy material, causing it to slide. *Held* sufficient to sustain a judgment against defendant.

Appeal from trial term, St. Lawrence county.

Action by Rose Tetherton, as administratrix of the estate of Alfred Tetherton, deceased, against the United States Talc Company, for damages for the death of her intestate. From a judgment for plaintiff and an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Vasco P. Abbott and Ledyard P. Hall, for appellant.
John N. Carlisle, for respondent.

MERWIN, J. On the 13th day of February, 1897, the defendant was engaged in operating a talc mine at the village of Talcville, St. Lawrence county, and Alfred Tetherton, plaintiff's intestate, was in its employ as a miner. Upon that day, at about 4:30 in the afternoon. Tetherton, being then at the bottom of the mine, was killed by the fall upon him of a large mass of material, called in the case a pillar of talc. It is alleged by the plaintiff that the accident was caused by the negligence of the defendant, in that it failed to provide a safe place for the decedent to work in, allowed the mine to become unsafe and insecure, and did not barricade or timber the

mine.　Upon the trial a general verdict was rendered for the plaintiff for the sum of $3,500.　Specific questions were also submitted to the jury, which,. with the answers by the jury, are as follows:

"First. Did the defendant fail to exercise due care in regard to the pillar? Ans. Yes.　Second. Did the fall of the pillar result directly from an excessive blast?　Ans. Yes.　Third. Had the duty of the deceased for the day ceased when the blast went off?　Ans. No.　Fourth. Was the defendant guilty of negligence?　Ans. Yes.　Fifth. Was there any negligence on the part of the deceased contributing to the injury?　Ans. No.　Sixth. What was the amount of damages sustained by the widow and the next of kin from the death of Tetherton?　Ans. $3,500."

It is claimed by the defendant that the evidence does not warrant the finding of any negligence on the part of the defendant, and that the firing of the excessive blast was the act of a co-employé, and not chargeable to the defendant.　The mine had been opened some years before, and it was worked by sinking a shaft into the ground at an angle of about 45 deg.　This shaft, at the time of the accident, extended down about 150 feet.　Its mouth was 15 to 20 feet wide, and 10 to 12 feet high. ˙ It was larger as it went down.　In this shaft, for the purpose of removing material from the mine, a railroad track had been laid, on which a car was run by means of a cable connected with an engine upon the top of the bank.　The vein of talc which was being mined was on an incline the same as the shaft. The talc was in layers from 2 to 18 inches thick.　After the shaft had been sunk about 50 feet, a drift or level was made to the right, which was extended · in that direction from 30 to 35 feet.　After the talc was taken from this drift, the shaft was carried down about 25 feet further, and then another drift to the right was made, about the same distance and direction as the first one.　This drift seems to have extended as far down as the bottom of the shaft.　The lower drift was directly beneath the upper one, following the angle of. the shaft and the vein.　At the further end of the lower drift, workmen had, for some days prior to the accident, been engaged in blasting for a passageway up to the further end of the upper drift, and had progressed so that the distance between the two at that point or neck was about 7 feet.　The opening of this passageway would sever the connection between the column of talc and the surrounding material on each of its sides, and leave the column in position between the foot wall and hanging wall.　In the afternoon in question preparation was made for a blast, at this passageway or neck, under the direction of McCoy, the pit boss, and an unusual amount of powder or dynamite was used.　The blast was fired at about 4 o'clock.　Before this was done, the decedent and others at work at the bottom of the pit previously went up the shaft to a place of safety, and there remained for 15 or 20 minutes after the firing, when, supposing the danger was over, they returned.　About half an hour after the firing, the mass of talc between the two drifts fell.　This mass of material, constituting the pillar, was about 30 feet long, 25 feet wide, and 14 to 20 feet thick.　It ran from the bottom or foot wall to the top or hanging wall upon a slant.　The pillar, in falling, started from the top.　No portion of the hanging wall dropped with it.　Some part of the pillar remained along the foot wall.　The decedent had

nothing to do with the blasting. The superintendent or foreman of the mine testifies that the blasting and excavation at the passageway, back of the pillar was done by his directions, for the purpose of shifting the car track from the position it occupied to a new route, and one that would be more convenient and economical in taking out the talc.

The fact, as found by the jury, that the fall of the pillar resulted directly from an excessive blast, does not necessarily relieve the defendant. Assume that the blast was excessive by reason of the negligence of McCoy, the pit boss, in disregarding the instructions given to him by the superintendent, still he was engaged in carrying out the plan of the master in the preparation of a new way or appliance to be used in carrying on the work. In Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466, the rule is laid down that, when a servant is injured by the negligent performance of an act or duty which the master, as such, is required to perform, the latter is liable, although the negligence was that of another servant to whom the performance of the act or duty was intrusted, and this without regard to the rank or title of the person guilty of the negligence; that the master is not relieved from liability in such case by the fact that he has promulgated rules or regulations for the proper performance of the act or duty by his agent, which were disregarded by the latter. It is not clear that the principle of this rule may not be applicable here. Passing, however, this question, there is another phase of the case to be considered.

Negligence of a servant does not excuse the master from liability to a co-servant for an injury which would not have happened had the master performed his duty. Coppins v. Railroad Co., 122 N. Y. 557, 25 N. E. 915. If several proximate causes contribute to an accident, each being an efficient cause, without which the accident would not have happened, it may be attributed to all or any of them. Ring v. City of Cohoes, 77 N. Y. 83. It was not found by the jury that the sole cause of the falling of the pillar was the excessive blast. On the contrary, they, in effect, found that the defendant was negligent in failing to exercise due care in regard to the pillar, and that the accident would not have happened had the defendant in this regard performed its duty. The court charged the jury that the plaintiff must satisfy their minds, by a fair preponderance of evidence, that the defendant had been guilty of negligence, and that such negligence caused the injury. The court was not asked to be more specific in this respect. The question, then, is, does the evidence warrant the conclusion that the defendant was guilty of negligence that contributed to the accident, and without the existence of which the accident would not have happened? It was the duty of the defendant to adopt all reasonable means and precautions to provide for the safety of its employés. Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 373. It is provided by statute that each owner, agent, manager, or lessee of a mine shall cause it to be properly timbered, and the roof and sides of each working place therein properly secured, and that no person should be permitted to work in an unsafe place or under dangerous

material, except to make it secure.    Laws 1890, c. 394, §§ 9, 10; Laws
1897, c. 415, § 122.    There is evidence in this case tending to show
that the defendant, through its managing agents, for some time be-
fore the accident, had notice of the dangerous position of the pillar
in question, and of its liability to fall, and that timbers had been pro-
cured for use in protecting it, but had not been used.    Its sloping
position and the very slippery character of the talc would naturally
cause apprehension of danger.    A quantity of water had accumulated
at one point of the upper side, and had been there for a month or two.
The water dripping down the crevices between the layers after a
blasting increased the tendency of the layers to slide by softening
the greasy material between them.    Blasting had been going on for
several months.    The evidence was, I think, sufficient to sustain the
conclusion of the jury that the defendant was liable.

A point seems to have been made that the duty of the decedent for
the day had ceased when the blast went off.    The finding of the jury
on this subject, as well as on the subject of the contributory negli-
gence of the decedent, is sustained by the evidence.    There are no
exceptions that need be specially considered.

Judgment and order affirmed, with costs.    All concur.