(121 App. Div. 61)

## ARRAS v. STANDARD PLASTER CO.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—ADMISSIBILITY.

In an action for injuries to a miner, owing to a fall of rock from the roof of a room in which he was working, it was error to exclude evidence tending to show that the mine was inherently dangerous, and that persons skilled in the work should have known of such danger and taken precaution against the same, where it was shown that the conditions at the time of the accident were the same as those at the time to which the testimony related.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 917.]

McLennan, P. J., and Williams, J., dissenting.

Appeal from Trial Term, Genesee County.

Action by Peter Arras against the Standard Plaster Company. Appeal by plaintiff from a judgment in favor of defendant, and from an order denying a new trial. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

George W. Watson, for appellant.
George P. Keating, for respondent.

KRUSE, J. The plaintiff, a workman in the defendant's plaster mine, was hurt while so employed; a mass of rock and other material falling upon him from the roof of the mine. He contends that the defendant failed in its duty to secure the roof, and prevent its falling, and make his working place reasonably safe; that the defendant by reasonable inspection could have ascertained, before the mass of rock fell, that it was insecure and liable to fall; that it negligently failed to discover the insecurity, or, if known to it, failed to secure the material which fell; that the plaintiff was assured by the defendant's superintendent of its safety, and relied thereon; that he himself was reasonably careful for his own safety, and the risk was not one assumed by him, but that the accident was due entirely to the carelessness of the defendant. At the close of the plaintiff's case, the defendant's motion for a nonsuit was granted; the trial court holding that the falling of the material was caused by the blasting done by the plaintiff and his fellow workman, in working the mine. The plaintiff excepted, and this exception and the exclusion of certain testimony offered by the plaintiff, which will be referred to later, present the only questions which need be discussed upon this appeal.

The mine is situate in Genesee county. It is dug horizontally into

the side of the bank of Tonawanda creek. The main tunnel extends into the hill eight or ten rods; then turns to the right, a distance of five or six rods, to the chamber where the accident occurred. The chamber is about five or six feet deep, three or four feet wide, and about six feet high. The plaintiff, a laborer, commenced work in the defendant's mine in June, 1902, and the accident occurred on Monday, November 3d of the same year. The chamber had been blasted on the Friday preceding the accident by the plaintiff and his fellow workman, both of whom were directed in their work by the defendant's superintendent, who had full charge of the work. He gave them the directions in the placing of posts to keep the material from falling and the manner of prosecuting the work, directing the plaintiff and his fellow workman where to work and how to do it. Two posts were placed at the entrance to the chamber, but none inside where the material fell.

The plaintiff testified that he was not a miner; that he had never done anything except common labor in a mine; that the superintendent told him where to work, and showed him the particular place to dig in the chamber; that the superintendent examined the place, and said it was all right, that the arch had been left all right, that the rock over head in the chamber was roof rock, and perfectly safe, that the superintendent held up his lamp and looked at it, and took the bar and felt of it, and thereupon said that it was roof rock, all safe, and no danger; that plaintiff believed the statement, and thought that the place was safe. The plaintiff testified, further, that he was directed to bore a hole in the side wall, load with a cartridge and explode it, which was done by means of a current of electricity communicated through a wire with which the cartridge was connected; that the blast was exploded by the plaintiff, and thereafter the plaintiff and a fellow workman re-entered the chamber, and were engaged in prying off with a bar the plaster which had been loosened by the blast on the side wall of the mine; that while so engaged a mass of rock weighing about 600 pounds and covering about two-thirds of the ceiling fell upon the plaintiff.

The precise time which elapsed after the explosion of the blast, and before the falling of the rock, is not stated. The plaintiff gave it as a short time. It further appeared that there was no rule in the mine by which an inspection was made after the blast, and before the workmen returned. While the plaintiff admitted that he also thought the ceiling of the chamber was solid, and exercised to some extent his independent judgment, yet he relied upon what he was told by the superintendent—that this rock which fell was safe and would not come down. Had the rock which fell been solid roof rock extending beyond the sides of the chamber, it is entirely probable that it would have been safe, as the superintendent claimed it was, and it is equally probable that, if the chamber had been timbered by placing proper supports underneath the roof, where this rock was located, it would not have fallen. It is possible that the firing of the blast may have been a contributing cause of the rock falling, although it is by no means certain, since the rock that fell did not extend to the side of the wall where the blasting was being done; nor is it certain that the use of the

crowbar in removing the broken plaster from the side wall was a contributing cause of the accident, as that work was being done on the side about midway between the roof and floor of the mine chamber. But, even if either or both contributed to the accident, it does not follow that the defendant is absolved from liability. If it failed in its duty to the plaintiff in properly supporting the roof of the mine, or otherwise failed to take reasonable precautions for the safety of its workman, the plaintiff, and such neglect upon its part contributed also to the accident, and without which the accident would not have happened, it might still be liable to the plaintiff for the injuries which he received resulting from the accident. Tetherton v. U. S. Talc Company, 41 App. Div. 613, 614, 58 N. Y. Supp. 55, affirmed in 165 N. Y. 665, 59 N. E. 1131.. While the evidence is not very satisfactory as to whether reasonable inspection would have revealed the insecurity of the overhead mass of material, yet the evidence which the plaintiff offered, showing the formation and character of the rock, and the general condition of this mine, which was excluded, against the plaintiff's exceptions, might have made that fact appear clearer. It is true that the evidence related to the condition of the mine as it was several months after the accident; but it appeared that the mine was in substantially the same condition as it was at the time of the accident, that the rock which fell was still there, and that the general formation and character of the rock and other material through and in which the mine was excavated had not changed.

The plaintiff contends that, if he had been permitted, he would have shown that the mine was inherently dangerous, that numerous so-called chimneys of earth extended from the surface of the ground to the interior of the mine, through which moisture was carried, thereby disintegrating and loosening the earth and rock so that it would fall in the mine; that even with the best of timbering it would be dangerous to carry on mining operations in this mine; and that this condition would have been shown to be so apparent to a person familiar with such conditions that the defendant knew, or ought to have known, it in the exercise of reasonable care for the safety of its workmen, although the danger was not apparent to an ordinary workman; and it is urged that the defendant should at least have warned the plaintiff of the danger, instead of assuring him that the ceiling of this chamber was roof rock, and safe.

The general rule that an employer is required to provide his workmen with a reasonably safe place in which to work has been supplemented from time to time by statutory enactments imposing upon employers specific duties for the safety of workmen engaged in particular kinds of work. The Legislature, evidently having in mind the dangers to workmen in mines, has provided as follows:

"Each owner, agent, manager or lessee of a mine shall cause it to be properly timbered, and the roof and sides of each working place therein properly secured. No person shall be required or permitted to work in an unsafe place or under dangerous material, except to make it secure."

This provision was contained in chapter 394, p. 747 of the Laws of 1890, and was subsequently embodied in the Labor Law, Laws 1897, p. 488, c. 415, and made a part of section 122 of that act.

It cannot be said as a matter of law, that the plaintiff assumed the risk of the insecurity of the material which fell from the top of the chamber, if the plaintiff was negligent in its duty in failing to properly secure the same, and permitted the place where the plaintiff was required to work to become unsafe, since there is no presumption that the plaintiff assented to any but the necessary risks of his occupation or employment, and which were inherent in the nature of the business in which he was engaged, after the defendant had exercised due care in providing for his safety, and complying with the laws affecting or regulating the occupation for the greater safety of the employés engaged therein. Section 3, c. 600, p. 1750, Laws 1902. The duty of making the plaintiff's working place reasonably safe devolved upon the defendant. It was not a mere detail of the work, if the plaintiff is right in his claim as to the effect to be given to the evidence, and the inferences to be drawn therefrom. Had the material fallen upon the plaintiff while he was engaged in placing the pillars, or otherwise making the mine more secure, a different question might be presented; but this particular part of the mine where the material fell was held out to the plaintiff as being safe and requiring no further security or means of safety. In fact, he was assured by the superintendent that it was safe, and that the material would not fall. Whether he was justified in relying upon the presumably superior knowledge of the superintendent, and whether the superintendent was negligent in not discovering the true condition, necessarily depended, to some extent at least, upon the formation and other conditions of the material in which the mine was being worked.

It is contended on behalf of the plaintiff that the testimony which was offered by him and excluded would have shown a condition inherently dangerous, and that, while ordinary workmen might discover its true condition, a person familiar with the operations of mining and skilled in that kind of work ought to have appreciated the danger. We are clearly of the opinion that the evidence offered was competent and material, and that it was improperly excluded.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except McLENNAN, P. J., and WILLIAMS, J., who dissent.