the obligation of the bond still existed. Upon the conveyance of the mortgaged premises by the mortgagor, however, it became the primary fund for the payment of the mortgage; but the right of the mortgagee to resort to the bond of the payment of the debt was not affected or impaired by the conveyance. Calve v. Davies, 73 N. Y. 211, 29 Am. Rep. 130. It was also held in that case that the mortgagor could not by any dealings or contract with a third party change the right of the creditor to proceed on the bond or compel him to resort in the first instance to the land, but here the dealings were between the mortgagor and the mortgagee, and the mortgagee by accepting the conveyance of the land, but retaining the lien of the mortgage, was bound in equity to proceed to foreclose that lien before resorting to the obligation of the mortgagor upon the bond. I think, therefore, that there was a good equitable defense to a suit upon the bond until the plaintiff had exhausted his remedy upon the land, the primary security, and that, defense having been set up in the answer, the court was justified in postponing the enforcement of the bond until the mortgagee had exhausted his remedy as against the primary security for the payment of the mortgage.

---

### PALMIJIANA v. HYDE–McFARLIN CO.

(Supreme Court, Appellate Division, Fourth Department.  May 6, 1908.)

1. MASTER AND SERVANT—OBLIGATION OF MASTER TO FURNISH SAFE PLACE TO WORK.

An employer owes to his employé the duty of using reasonable care to make the place in which the employé is required to work reasonably safe, and such duty cannot be delegated to any employé of any grade, so as to exonerate the employer from responsibility to an employé injured by the nonperformance thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 175.]

2. SAME.

Where an employer directs the performance of work by his employé at a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care, the employer must exercise such care, and adopt such precautions as will protect the employé.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 173, 174.]

3. SAME.

An employer was engaged in excavating a cut across a street by means of a steam shovel operated by an engine.  When the work had progressed to the place where a gas main was located, the shovel punctured the main, and gas escaped into the five box of the engine, which resulted in an explosion, causing the death of a common laborer.  The decedent did not know of the existence of the main, but the superintendent of the employer knew the facts, but no precautions were taken to prevent the shovel from coming in contact with the main.  *Held* to authorize a finding that the employer was guilty of negligence for failing to use reasonable care in providing decedent with a reasonably safe place in which to work.

Kruse and Robson, JJ., dissenting.

Appeal from Trial Term, Erie County.

Action by Achilo Palmijiana, administrator of Vincenzo Palmijiana, deceased, against the Hyde-McFarlin Company. From a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial made on the judge's minutes, defendant appeals. Affirmed.

The action was commenced on the 19th day of November, 1906, to recover damages because of the death of plaintiff's intestate, alleged to have been caused solely through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Clinton B. Gibbs, for appellant.

Walter W. Chamberlain, for respondent.

McLENNAN, P. J. The defendant is a corporation, and at the time in question was engaged in excavating a cut for the roadbed of the Pennsylvania Railroad in the city of Buffalo, N. Y., and across Seneca street, by means of an 80-ton steam shovel which traveled on movable tracks and was operated by an engine. The cut was about 40 feet wide at the top, 34 feet wide at the bottom, and 10 or 11 feet deep. The cut was to be extended over and across a gas main laid in said street. When the work had progressed to the place where the main was located, the pointed teeth of a rack, which was under the shovel and attached to it for the purpose of loosening the dirt, came in contact with the gas main, punctured it, and a large volume of gas escaped into the fire box of the engine, which resulted in an explosion and caused the death of plaintiff's intestate, who was a common laborer in defendant's employ. The tracks upon which the steam shovel was operated were laid in the bottom of the cut, and by means of one engine the shovel, which was in front, was crowded into the foot of the bank, and, when loaded, was by means of another engine raised up out of the cut and swung to either side, and dumped. The engine which raised the bucket and swung the boom was operated by an engineer named McDermott, and the engine which crowded the shovel into the face of the bank was operated by a craneman named Davis. Some weeks prior to the accident the defendant's superintendent, who had charge of the work, had been informed of the existence of the gas main and generally of its location, but, to ascertain its situation definitely, he caused to be dug a test hole about three feet wide and ten feet long, and deep enough to expose the surface of the pipe. It does not appear that the attention of plaintiff's intestate had been called to this test hole, that he knew the purpose of digging it, or that he knew of the existence or location of the gas main, and it appears that at the time of the accident the hole had been partially refilled by the earth from the sides caving in, and also that there was more or less water in it; so that at the time of the accident the gas main could not be seen or its location ascertained by observation. The engineer and craneman knew the purpose of the test hole and knew that the gas main was at the bottom, but at the time of the accident neither of them knew its distance from the surface for its entire length, or whether or not for

the entire width of the excavation it was above or below the level of the bottom of the cut upon which the shovel was being operated, and in such situation that it could be passed over without injury.

On the day previous to the accident, and when the cut had been excavated to within about 25 or 30 feet of the gas main, the defendant's superintendent came upon the work and had a talk with the engineer and the craneman, telling them, in substance, that they must be careful in crossing the gas main, that it was attended with danger, and that, if they found that it was higher than the level of the cut to back up the apparatus on the track and to make an incline and bridge over the gas main, but, so far as appears, no material was furnished for that purpose, nor were any specific instructions given as to how such work or bridging was to be done. The superintendent then left the work, and from that time until the accident, which occurred between 10 and 11 o'clock on the following day, the entire management of the shovel was left to the engineer and craneman. It appears that immediately before the accident the shovel removed the earth from eight or ten feet in length of the pipe without harm, but that, when the shovel was attempted to be forced into the bank again, it struck the gas main and punctured it, as above stated. It also appears that the gas main was not upon a level; that the point at which it was punctured was higher than the part from which the earth had already been removed. It appears that the engineer and craneman took no precautions to prevent the shovel coming in contact with the gas main; that they did not make measurements to ascertain whether it was above or below the level of the track on which the shovel was being operated; neither did they make any effort to bridge it as directed by the foreman. The action was tried upon the theory that the defendant was guilty of negligence because it had failed to use reasonable care and diligence in providing the plaintiff's intestate with a reasonably safe place in which to work, and counsel for both sides acquiesced in such manner of submission. The learned trial court charged that under all the circumstances it was for the jury to determine whether or not the place was reasonably safe. He charged that, if it was, the plaintiff could not recover, but that if it was unsafe to the knowledge of the defendant, and plaintiff's intestate was not warned of the danger and that it was unsafe, that he could recover, provided they found that he was free from contributory negligence.

We think the finding of the jury that the place in which the deceased was set to work was unsafe and dangerous was amply justified by the evidence. The presence of the gas main in and of itself did not make the place dangerous, but, when considered in connection with the work which was being done about it, it is evident that it was highly dangerous. If a case of dynamite had been placed in the bottom of the cut, no danger would result from that circumstance alone, but, if a steam shovel should be operated over or upon it, an explosion might reasonably be expected to result. In this case the fire box of an engine operating an 80-ton steam shovel was placed in close proximity to a gas main, and under such circumstances that it must have been evident to a person exercising ordinary care and prudence that such main would very

likely be broken, and that, if so, an explosion would follow. The defendant owed to the deceased the duty to use reasonable care to make the place in which he was required to work reasonably safe, and such duty cannot be delegated to any servant of any grade so as to exonerate the master from responsibility to a servant who has been injured by its nonperformance. Pantzar v. Tilly Foster Iron Mining Company, 99 N. Y. 368, 2 N. E. 24; Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877. And whether unsafe or not depends as much upon the character of the work being done and the manner of doing it as upon the character of the place or particular spot where the employé is located. "When the master directs the performance of work by his servant at a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care, it is the master's duty to exercise such care and adopt such precaution as will protect the servant." McGovern v. Central Vermont Co., 123 N. Y. 280, 25 N. E. 373. Applying to the case at bar the principles of law enunciated by these and other decisions which might be cited, it would seem clear that the evidence warranted the finding that the defendant was guilty of negligence. The superintendent knew that plaintiff's intestate was liable to be directed at any moment to work in close proximity to the hidden gas main, and that in the progress of the work his situation would be dangerous in the extreme, and yet, without warning him of such danger, he was sent to the place where he met his death. On the day previous to the accident, and when the shovel had nearly reached the main, the defendant knew, or by the exercise of reasonable diligence might have known, that it was approaching on such a level that, unless the elevation of the track was changed, the main would be broken, and that probably an explosion would result. He took no means to avert such disaster, except to give the directions to the engineer and craneman referred to. This was not a discharge of the master's duty in the premises to furnish his servant a reasonably safe place in which to work. The engineer and craneman were the alter ego of the master during the day of and at the time of the accident. They knew, or ought to have known, that to place the shovel over the gas main without ascertaining its location would at once cause a most dangerous place, and that injury would probably result to all engaged in the work. But, without making any investigation as to the height of the main as compared with the track upon which the shovel was being operated, they proceeded in such manner as to necessarily make the place where the deceased was directed to work dangerous and unsafe, and without in any manner warning him of such danger. The place was unsafe as to plaintiff's intestate because of a hidden danger of which he had no knowledge, but of which the defendant was fully advised, and in carrying on the work which he was directed to do, wholly oblivious of any danger, he was led or driven to his death. The deceased was in no danger because of the excavation of the cut in and of itself, but his peril arose because of the hidden gas main, located in the track of the shovel, in connection with the work of its operation about which he was engaged.

The case of Citrone v. O'Rourke Engineering Construction Company, 188 N. Y. 339, 80 N. E. 1092, relied upon by appellant's counsel (and other cases cited), we think is clearly distinguishable from the case at bar. In that case the defendant was held not liable because the construction of the trench, the doing of the work, in and of itself caused the accident, resulting from performing a detail of the work in which the plaintiff in that case was engaged. He knew that blasting was being carried on, and that by that means the earth or rock which he was to remove was loosened and made ready for him to handle, and the loosening of the material which fell upon him was simply a detail of the work, for the doing of which the master was not liable, although done in a negligent manner by a fellow servant. In the Citrone Case, if the plaintiff had been directed to enter the trench by the master, or by his foreman, his alter ego, however competent, without having been informed or having any knowledge that blasting was being done, and had commenced removing material from directly over an unexploded blast known so to be by the foreman, we think it clear that such plaintiff would have had the right to insist that the master had not discharged his duty as to him, in that he had not furnished a reasonably safe place in which to work. Suppose a master employs a number of men to take down a building. He sets them all to work in the upper story, directly under the roof, to remove the ceiling, floor, etc., under the direction of a foreman, who, we will assume, is entirely competent. The master discovers that because of an unusually heavy fall of snow the roof is about to fall in, indicated by the appearance of cracks, and informs his foreman of the condition of the roof, telling him that it is dangerous, and that he must be careful in removing the material below, that the roof must not be shaken, and that he should support it until the work underneath is completed. The foreman fails to obey the master's instructions in any particular, but directs the workmen to proceed with the work of removing the ceiling and floors. They do proceed, to the knowledge of the master, and whether his foreman has obeyed his instructions he does not know, and does not inquire. The workmen are not informed of the danger, by the exercise of ordinary care could not have discovered it, and in prosecuting their work, in the ordinary way, the roof is shaken and falls and the employés are injured. In such case could it be held that the master had discharged the duty imposed upon him by law to use reasonable care to make the place in which his employés were required to work reasonably safe? Removing the ceiling and floors in the upper story of the building was not attended with danger. The danger arose because of the overloaded and weakened condition of the roof, which the master and the foreman, the alter ego of the master, in his absence, knew all about, but of which the workmen were wholly ignorant. The accident which we have supposed resulted not because of performing a detail of the work in which the injured employés were engaged, but because of a hidden danger. In the case at bar no danger attended the mere digging of the trench which has been described. That work was progressing precisely as it had been for weeks before. Plaintiff's intestate and the other common laborers working

about the steam shovel had no reason to suspect that their work was attended with the slightest danger. In fact, it was not, except for the hidden danger resulting from the gas main, of which he had no knowledge.

We conclude that the finding of the jury that the defendant was guilty of actionable negligence is amply supported by the evidence. Also, that the plaintiff's intestate was free from contributory negligence, and that he did not assume the risk of the accident. We think that none of the exceptions taken by the appellant present reversible error.

It follows that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except KRUSE, J., and ROBSON, J., who dissent in a memorandum by KRUSE, J.

KRUSE, J. (dissenting). It is not contended that this judgment may be upheld because of any liability arising out of Employer's Liability Act, Laws 1902, p. 1748, c. 600. Counsel for the plaintiff states in his brief that the trial court declined to submit to the jury any question arising out of that act, and the plaintiff was required to maintain and establish his cause of action under the common-law rule.

McDermott, the engineer operating the steam shovel, and Davis, the craneman, operating the dipper, both knew of the existence of the gas pipe. The superintendent was not present when the accident occurred, but they had been warned the morning before of the gas pipe, and that it might be necessary to block up the machine. The danger of encountering this gas pipe was apparent and well understood, and the failure to block up the machine, or otherwise avoid encountering the pipe, was through either an error of judgment, or carelessness upon the part of these two men operating this machine.

Counsel for the defendant requested the court to charge that, if the accident was caused by the negligence of McDermott or Davis in operating the dipper, the plaintiff cannot recover, which was refused and an exception taken. I can see no difference in principle between negligence in operating the dipper so as to encounter the gas pipe, and the negligence of a workman striking the pipe with a pickax, causing the rupture thereof, followed by an explosion from the escaping gas, after the workman had been informed in regard to the pipe and warned of the danger of striking it. In either case it seems to me it is the act of a fellow servant and a detail of the work. I do not think the engineer and craneman were the alter ego of the master respecting the negligent act, as is held in the prevailing opinion. Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521. I am of the opinion that this case falls within the rule of Citrone v. O'Rourke Engineering Construction Co., 188 N. Y. 339, 80 N. E. 1092, and Russell v. Lehigh Valley R. R. Co., 188 N. Y. 344, 81 N. E. 122.

I vote for reversal.

ROBSON, J., concurs.