## PEPE v. UTICA PIPE FOUNDRY CO.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1909.)

1. MASTER AND SERVANT (§ 101*)—PLACE OF WORK—MASTER'S DUTY—CARE REQUIRED.

An employer must furnish an employé a reasonably safe place to work, and use reasonable care and foresight not to subject him to unnecessary danger, taking into account any special danger involved in the methods of work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 171; Dec. Dig. § 101.*]

2. MASTER AND SERVANT (§ 201*)—MASTER'S LIABILITY—FELLOW SERVANTS—CONCURRENT NEGLIGENCE OF MASTER AND FELLOW SERVANT.

An employer is liable for injuries to an employé, though in part caused by the negligence of a fellow servant, if the injury would not have happened but for the master's negligence in failing to furnish a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 515; Dec. Dig. § 201.*]

3. MASTER AND SERVANT (§ 286*)—INJURIES—ACTIONS—JURY QUESTION.

In an employé's action for injuries sustained while assisting in lowering molds into a pit in a pipe foundry, where plaintiff was required to stand on a narrow platform to guide the molds as they were lowered into the pit, which was fenced about by metal work which would prevent plaintiff from retreating in case of danger, whether defendant was negligent in erecting a structure requiring a method of work so dangerous to workmen in plaintiff's position *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1032; Dec. Dig. § 286.*]

4. MASTER AND SERVANT (§ 286*)—INJURIES—ACTIONS—JURY QUESTION.

In an action for injuries to a servant sustained while assisting in lowering metal flasks into a pit in a pipe foundry, whether defendant was negligent in permitting the flasks to be lowered in the ordinary manner *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1032; Dec. Dig. § 286.*]

5. MASTER AND SERVANT (§ 288*) — INJURIES — ACTIONS—JURY QUESTION—ASSUMPTION OF RISK.

In a servant's action for injuries sustained while assisting to lower and place a metal flask in a pit in a pipe foundry, whether plaintiff assumed the risk of injury from doing the work in the customary manner *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1071; Dec. Dig. § 288.*]

Williams, J., dissenting.

Appeal from Trial Term, Oneida County.

Action by Vincenza Pepe, as administrator of the estate of Donato Pepe, deceased, against the Utica Pipe Foundry Company. From a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judgment for defendant after a nonsuit, plaintiff appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frederick G. Fincke, for appellant.

Warnick J. Kernan, for respondent.

KRUSE, J. The plaintiff's intestate, a workman in the defendant's employ, was so seriously injured while at his work that he died within a few hours after being hurt. It is contended on the plaintiff's behalf that the deceased lost his life through the defendant's negligence. The grounds of negligence are (1) the failure to furnish a safe place to the deceased in which to do his work; (2) negligent method used by the defendant in carrying on the work which the deceased assisted in doing; (3) failure to instruct and warn the deceased of its dangers. A nonsuit was granted, and the plaintiff appeals.

The defendant is a domestic corporation engaged in operating a pipe foundry in the city of Utica, in this state. It uses iron receptacles or molds in casting, called "flasks." Each flask weighs 3,600 pounds, and is lowered by an electric crane into a pit. As it is lowered, the flask and chain to which it is attached sways, so that there is a lateral as well as a downward motion of the flask. It was the duty of the deceased and a fellow workman to take hold of the flask as it came down, and guide it to its proper place upon a turntable at the bottom of the pit. The turntable is then moved to the left, and another flask put in position in the same manner. At the time of the accident, the deceased had hold of a flask, and was attempting to guide it into position. The flask swung toward him, striking him in the stomach, pushed him against the iron work back of him, and crushed him.

It is necessary to state a little more in detail the structures and appliances used, and method of doing the work, to appreciate the dangerous situation in which the deceased was placed in carrying on this work. The turntable is a steel structure, located in a hole or pit about 13 feet deep. About three feet from the bottom of the pit, and forming the lower portion of the turntable, there is a construction in the form of a cart wheel, laid flat on the ground, with a felly or rim supported by spokes or radials running to the center. The rim is about four feet wide, and forms a shelf or resting place for the flasks. The top or roof of the turntable is even with the ground or floor of the plant. It is 35 feet in diameter, and is supported by 14 steel columns or I-beams resting on the spokes or radials. The columns are 6 feet 5 inches apart, and are placed 21 inches from the inside of the rim, toward the center of the turntable, and in every alternate space between the colums there are two I-beams running diagonally from the top of one column to the bottom of the other, crossing each other in the center of the space. Between the inside of the rim and the uprights is a wooden platform for the workman to stand upon in doing his work. The flask is a hollow cylinder, weighing 3,600 pounds, as has been stated, about 12 feet 7 inches long, 2 feet 10 inches in diameter at the bottom, and 1 foot 3 inches at the top, closed at

the bottom and open at the top, standing upright when in position, and held in place by two small pins projecting from the rim and fitting into a socket or hole through an ear called a "chill" at the bottom of the flask. The electric crane which lowers the flask is in the upper part of the building. The flask is lowered by means of a chain 44 feet long, so that the greatest length of the pendulum made by the swinging chain and flask is upwards of 50 feet. The deceased was required to stand upon the narrow wooden platform in doing his work, with this iron construction work immediately back of him. It evidently required care and attention to guide the flask so as to fit it on the pins, and properly place the flask on the rim. The turntable was completed about Christmas, 1906, and the first pipe made in February, 1907. The deceased commenced to do the work in question April 4, 1907, and was hurt on the 11th day of April, 1907. During the months of February and March several workmen had left the work, and complaint had been made to the defendant that it was dangerous. The deceased succeeded a workman who had left the defendant's employ. Up to that time he had never worked at this work. No special warning or instructions for his own safety were given him, although the defendant's foreman testified that the deceased told him he could do the work, and that, after he had gone to work there, he stated that he would like to be there steadily, if paid as much money as was paid to the other man. While no one seems to have been injured during the two months immediately preceding the accident, it does appear that at times the flasks would swing in all directions, striking other flasks and some part of the structure, while they were being let down and placed in position. The defendant's foreman himself testifies that, before the accident, he had seen flasks vibrate and strike some portion of the structure. On the afternoon of April 11th, when the accident occurred, a flask was being lowered into the pit as usual. The clasp or hinge on the side caught some part of the turntable construction above the deceased, causing the lower end of the flask to swing in toward him, and push him against the iron work behind him, injuring him.

The defendant contends that two other workmen stationed at the top of the turntable were negligent in not keeping the flask away from the top of the turntable where it caught; but that was a question of fact, and, even if true, does not necessarily absolve the defendant from the charge of negligence upon its part. The defendant was required to furnish a reasonably safe place to the deceased in doing his work, and to use reasonable care and foresight for his safety in carrying on its work, and not subject him to unnecessary peril and danger. If the defendant was negligent in that regard, and the accident would not have happened if that duty had been performed, then it is not exonerated from liability, even though the intestate's fellow workmen were also negligent, as is claimed by the defendant. Very likely, if the work of lowering and placing the flask in position had been done less expeditiously and more carefully, the accident would not have happened; but the defendant was aware of the way in which the work was being done. Whether the defendant was negligent in permitting

a method and practice so dangerous to a workman placed as the deceased was, was a question of fact. If it was necessary to use a method so hazardous, the defendant was required to take that into account in making the working place of the deceased reasonably safe. The evidence tends to show that the danger in that regard could have been materially lessened by omitting the diagonal braces, and strengthening the structure in some other way, thus leaving the space between the uprights entirely open. While a workman might still be crushed against the steel columns, such an accident would be less likely to happen, and in this instance it would not have happened, since the deceased was crushed between the moving flask and the construction work between the columns. If, however, it was impracticable to make this change and the defendant could not reasonably be called upon to do so for the protection of the workmen, the question still remains whether, under such circumstances, the defendant was reasonably careful in carrying on the work and permitting the practice of lowering and placing the flasks, as the evidence shows was usual and customary, and as was done upon the occasion in question.

As was said in the McGovern Case:

"When directing the performance of work by the servant in a place which may become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, it is his duty to exercise such care and adopt such precautions as will protect the servant from avoidable danger." McGovern v. Central Vermont R. R. Co., 123 N. Y. 280–288, 25 N. E. 373; Palmijiano v. Hyde-McFarlin Co., 126 App. Div. 221–225, 110 N. Y. Supp. 368, affirmed in the Court of Appeals (January 5, 1909) 87 N. E. 1124.

It is also contended that the deceased assumed the risk. We think that question, as well as that of the defendant's negligence, was one of fact.

The judgment and order appealed from should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except WILLIAMS, J., who dissents.